# JOHN V. FARWELL *et al.*

## *v.*

## DANIEL COHEN.

*Filed .at Springfield June 10, 1891.*

1. INSOLVENT DEBTOR—*bill of sale in trust—deed of assignment—jurisdiction of county court.* An insolvent debtor, by an instrument in writing, sold, assigned, transferred or set over to A his entire stock of goods in a certain store-room, and provided that A should take, receive and hold such goods in trust, to sell them at public sale, and out of the proceeds pay expenses and certain debts in the shape of notes of the maker, in a specified order of payment, and contained a proviso that A should not sell any more of the goods than enough to pay such indebtedness and expenses. Some of the notes were due and some not, and one was payable to A, and the grantee took possession of the goods: *Held,* that the instrument was a voluntary deed of assignment under the statute, and that the county court thereby acquired complete jurisdiction to administer the estate so assigned, and to execute the trusts thereby created.

2. The jurisdiction of the county court over the estate of an insolvent does not depend upon the validity of the deed of assignment. For the purpose of jurisdiction it is sufficient that there has been an assignment in fact for the benefit of creditors. The sole power of the court is to supervise and regulate the administration of a trust previously created by the act of the assignor.

3. Where a voluntary assignment is made, and the property assigned has passed into the possession of the assignee, such property is thereby brought within the jurisdiction and under the administrative control of the county court. It is true that the making of the assignment must precede the exercise of jurisdiction.

4. Where a *prima facie* case of a voluntary assignment is exhibited to the court, it then devolves upon such court to judicially investigate such case, and determine whether or not a voluntary assignment has in fact been made, whether or not the particular instrument in question is such an assignment, and whether or not it was executed by the supposed assignor; and in the event it is judicially ascertained that it is such an assignment, then the duty is imposed upon the court to execute and carry out the provisions of the Assignment act in respect thereto.

5. SAME—*creditor may be assignee.* A creditor of an insolvent debtor may be the assignee or trustee in a voluntary assignment of the latter, and the form of the instrument is not material.

6. SAME—*act concerning, liberally construed.* The act relating to assignments for the benefit of creditors is remedial, and should be liberally construed, and so as to remedy the evils intended to be cured.

7. A statute must be so interpreted, if it is reasonably possible, as that due effect shall be given to all its provisions.

8. SAME—*assignment for the benefit of creditors—defined—preferences void.* An assignment for the benefit of creditors is a voluntary transfer by a debtor of all or a part of his property to an assignee or assignees, in trust, to apply the same, or the proceeds thereof, to the payment of some or all of the assignor's debts, and to return the surplus, if any, to him, but under our statute all preferences among creditors are void.

9. SAME—*implies insolvency—act of 1877.* The Assignment act of 1877 is not, in express terms, confined to debtors who either are in fact insolvent or contemplate insolvency; but this court has held that a solvent debtor can not make a valid deed of assignment for the benefit of creditors. The making of such an assignment is an admission of insolvency. The expression, "assignment for the benefit of creditors," implies insolvency, and an inability of the debtor to pay his debts.

10. SAME—*failure to acknowledge—failure to record.* The failure of the assignor to acknowledge his deed of assignment of personal property, when possession is given to the assignee, and the failure of the latter to record the deed, will not invalidate or defeat the assignment, or deprive the county court of jurisdiction to compel the due execution of the trusts created by the assignment.

11. The duty of filing and recording the assignment and inventory, and valuation of the estate assigned, is upon the assignee, and his failure to perform any or all these duties will not invalidate the assignment and defeat the rights of the assignor and his creditors in the property.

12. SAME—*partial assignment—petition by creditor.* Where a debtor makes a partial assignment and delivers possession to the assignee, who fails to record the deed or to file an inventory or give bond for twenty days, a petition by a creditor or other person interested, setting forth the facts and properly verified, is a proper and competent mode in which to put the county court in motion. All other facts essential to set the court in motion may be shown by such petition. The assignee is a necessary party to such petition, and he may be brought into court by citation.

13. SAME—*partial assignment—estoppel of assignor and assignee.* Where the creditors of an insolvent debtor are not complaining that a partial voluntary assignment of the insolvent was not acknowledged and recorded as required by the statute, the assignee, whose duty it was to have the same acknowledged and recorded, and who is claiming under the deed, will be estopped from disputing the validity of the

assignment. The assignee can not take advantage of his own neglect of duty to defeat the rights of the beneficiaries under the deed.

14. Same—*partial and general—what property passes.* A voluntary assignment, which is upon its face a partial assignment, and which does not in fact purport to transfer substantially all the property of the debtor, and which contains no general terms descriptive of property, is not, by force of the act of 1877, converted into a general assignment of all the property of the debtor that is not exempt by law. The county court has jurisdiction to administer the trust estate in the case of a partial as well as of a general assignment.

15. A voluntary deed of assignment by an insolvent debtor passes the title of all the property specified in the deed, or in the inventory annexed thereto, and "any other property not exempt by law, belonging to the debtor or debtors at the time of making the assignment, that is comprehended within the general terms of the assignment." This is the case where the assignment is general, of all the debtor's estate not exempt by law.

16. Same—*neglect of assignee to file inventory—duty of court.* If the assignee shall fail, for the period of twenty days after the making of an assignment, to file an inventory and valuation and give bond, it is the duty of the county judge of the county where the assignment may be recorded, on the affidavit of any one interested, to appoint one or more discreet person or persons to execute the trust. The words, "where such assignment may be recorded," mean the county where it is recorded, or if not recorded, then the county where it is legally permissible to record it.

17. Same—*court first obtaining, retains jurisdiction.* The county court referred to in the act, and the county judge referred to in section 12, are the county court and county judge of the county in which the assignor resides, or in which the business in respect of which the assignment is made has been carried on; and if the residence happens to be in one county and the *situs* of the business in another, then the jurisdiction attaches to such one of said county courts and to such one of said county judges as first obtains jurisdiction of the subject matter.

18. Same—*assignee de facto.* Where the assignee has entered upon the execution of the trust to the extent of accepting the deed of assignment and taking and holding possession of the assigned property, and assuming to exercise the power of selling and disposing of it, he may, although he has not become an assignee *de jure,* under the statute, by complying with its requirements, nevertheless be regarded as an assignee *de facto* or assignee *de son tort,* and be brought into court under the provisions of section 7 of the act.

19. Statute—*directory or mandatory.* Directions in a statute which are not of the essence of the thing to be done, but which are given

with a view, merely, to the proper, orderly and prompt conduct of the business, and by a failure to obey which the rights of those interested will not be prejudiced, are not commonly regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it may still be sufficient if that which is done accomplishes the substantial purpose of the statute.

20. PRACTICE—*in voluntary assignment proceedings.* A material fact alleged in a bill, which is neither admitted nor denied, must be shown by the proofs, or it will not avail the complainant. The same rule applies to a petition in the county court in a voluntary assignment proceeding.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. C. B. SMITH, Judge, presiding.

John V. Farwell & Co. filed, in the county court of Vermilion county, a petition, verified by affidavit, wherein it was stated that they were creditors of George Silverman, of that county, and that he was indebted to them, for goods sold and delivered, in the sum of $1498.58, and that on December 18, 1887, said Silverman executed and delivered to Daniel Cohen an instrument of writing, as follows :

"*Know all men by these presents,* that I, George Silverman, of the city of Danville, county of Vermilion, and State of Illinois, in consideration of the sum of thirteen thousand four hundred and sixty-nine and seventy-hundredths dollars to me in hand paid by H. B. Claflin & Co., M. Cohen, D. Cohen, Simon & Rosenbloom, Mayer Singer and Sarah Silverman, the receipt whereof is hereby acknowledged, and in consideration of the sum of one dollar in hand paid to me by Daniel Cohen, do hereby sell, assign, transfer and set over unto said Daniel Cohen all and singular the following goods and chattels, viz. :

"All the stock of dry goods and carpets, boots and shoes, store fixtures, and every other article of property in and about the store-room known as No. 115 East Main street, in the city of Danville and State of Illinois, in trust, for the uses and purposes following, that is to say : Whereas, I am indebted to the persons hereinafter named in the amounts hereinafter

mentioned, which are evidenced by sundry promissory notes, as follows: One note dated August 10, 1887, for $653, due in six months from date; one note dated August 19, 1887, for $792.92, due in four months from date; one note dated August 20, 1887, for $654.01, due six months after date; one note dated October 2, 1887, for $421.36, due in three months from date; one note dated October 6, 1887, for $74.50, due in four months from date; one note dated August 9, 1887, for $791, due in four months from date,—all payable to H. B. Claflin & Co.; one note dated December 8, 1887, for $5850, due one day after date, payable to Moses M. Cohen; one note dated December 8, 1887, for $1450, due one day after date, and payable to Daniel Cohen; one note dated December 8, 1887, for $741, payable to Mayer Singer, and due one day after date; one note dated December 8, 1887, for $1900, due one day after date, and payable to Sarah Silverman; also, the sum of $150, due on an open account to Simon & Rosenbloom; and whereas, I am desirous of securing the payment of said several sums of money:

"Now, therefore, the said Daniel Cohen shall take, hold and receive said goods and chattels hereby conveyed, in trust, to sell the same at public sale in such quantities as he may see fit, after giving at least ten days' notice of the same by posting up notices of the same in at least five public places in said city of Danville, and out of the proceeds thereof, after paying the expenses of caring for said property and making said sale, to first pay the several amounts mentioned in said several notes payable to H. B. Claflin & Co; secondly, to pay said note to Daniel Cohen; thirdly, to pay the other indebtedness above mentioned: *Provided, however,* that said trustee shall not sell any more of said goods and property than is sufficient to pay said indebtedness and expenses aforesaid.

"In witness whereof I have hereunto set my hand and seal this 14th day of December, 1887.

GEORGE SILVERMAN. [Seal.]"

The petition further stated that the stock of goods so sold, assigned and transferred to Cohen, composed all the property and estate of any value belonging to Silverman, and that the latter, at the time of executing the instrument, was and still is wholly insolvent; that the liabilities of Silverman exceeded $40,000, and that said goods were insufficient to pay such liabilities, their value being not to exceed $20,000. It was alleged that the transfer was in fact and in law an assignment for the benefit of creditors to Cohen, as assignee, with preferences in favor of the persons in the instrument named, and that thereby Cohen became assignee of Silverman, and subject to all the duties and liabilities of an assignee. Further, that he had seized the property and held possession of the same, but instead of administering the same according to law, under the supervision and direction of the court, intended to wholly ignore the court, and administer the property solely for the benefit of the persons named in the assignment as beneficiaries, without regard to the rights of petitioners and other creditors of Silverman, and without complying with any of the provisions of the laws of Illinois regulating assignments, and in pursuance of such intention had given notice that he would sell said property on December 26, 1887, etc. It was also alleged that Cohen was not a resident of the State, and not a proper person to act as assignee; that he was one of the preferred creditors in the assignment, a relative of the assignor, and that he would not act impartially in the matter; that he was acting solely in the interest and under the direction of the insolvent and the preferred creditors, and that he had filed in the court no bond as assignee, nor any schedule or inventory of the property assigned, and that he did not intend to do so until compelled by the order of court. The prayer of the petition was, that an order be entered restraining Cohen from disposing of the property without an order of court, and requiring him to file a schedule of the assigned property and submit to the jurisdiction of the court, and that he be removed as

assignee, and some suitable person appointed to administer the estate under the direction of the court, and that a citation issue against Silverman, etc., and for other relief.

The answer of Cohen to the petition was as follows:

"The said respondent, Daniel Cohen, not admitting the jurisdiction of said court in the premises, but reserving at all times hereafter the right to question the same for cause why said petition should not be granted, says that he admits that George Silverman, on the 14th day of December, 1887, executed to respondent the said instrument in said amended petition described; that he is not sufficiently advised of the financial condition of the said George Silverman to state whether he is insolvent or not, or what the amount of his indebtedness really is or was, but admits that said stock of merchandise does not exceed in value the sum of $20,000, nor is he able to say whether said stock constituted all of Silverman's property; denies that, either in fact or in law, the instrument is an assignment for the benefit of creditors, within the meaning of the laws of the State of Illinois, and denies that the same was by the said Silverman intended to be an assignment, or was by respondent accepted as such, and avers that the same was not acknowledged by said Silverman, but, on the contrary, respondent avers that said instrument was executed and delivered by said Silverman, and received by said respondent as a chattel mortgage, or trust deed in the nature of a chattel mortgage, to secure the payment of the debts therein mentioned; that at the time of the execution and delivery of said chattel mortgage it was expressly understood and agreed, by and between said Silverman and this respondent, and by the creditors mentioned in said instrument, that said Silverman should have the right to redeem said goods and chattels at any time before the expiration of said ten days during which said sale was to be made, and at any time before said sale was made, by the payment of said debts in said chattel mortgage mentioned; that said notes mentioned in

said chattel mortgage as due said M. Cohen, Mayer Singer and Sarah Silverman, were all and each due, and contained a warrant of attorney, executed on the day of the date of said notes, authorizing the confession of judgments, in term time or vacation, on said notes, and that said payees of said notes were threatening and intending to cause judgments to be entered up for the amount of said notes, and to issue executions thereon, and levy the same on said stock of merchandise, and that said Silverman was not able to secure a further extension of the time for the payment of said notes except by the execution of said chattel mortgage; admits that he has entered into possession of said goods and chattels and has advertised the same for sale, but has not sold the same, and that the said goods are now subject to redemption by said George Silverman or any person entitled to redeem the same, and that he now claims no interest in said goods, and has never claimed or had any interest in said goods, save as trustee and mortgagee under said chattel mortgage; admits that he does not intend to execute a bond as assignee, or to file an inventory or schedule, but expressly denies all jurisdiction of this court in the premises to either compel him to execute said bond, or to file said schedule and inventory, or to remove him from his trust. Wherefore respondent asks that said citation may be dismissed, and that said restraining order, heretofore issued, may be dissolved, and that he may be hence discharged with his costs."

Said answer was verified by the affidavit of Cohen. The county court sustained a demurrer to said answer. The court then found that said Cohen did not intend to inventory and appraise the property assigned to him and enter into bond, and that he refused so to do, and that he had failed and neglected, for the period of twenty days after the making of the assignment, to file an inventory and valuation and give bond; and thereupon said court removed Cohen as assignee, and appointed John G. Thompson assignee. Upon an appeal to

the circuit court that court sustained a demurrer to the answer of Cohen, and in all things affirmed the judgment and order of the county court. The case was thereupon taken to the Appellate Court, and there the judgment was reversed, and the cause remanded, with directions to dismiss the petition. The petitioners, John V. Farwell *et al.*, have brought the record to this court by appeal, and have assigned errors.

Messrs. SMITH & PENCE, and Messrs. KRAUS, MAYER & STEIN, for the appellants:

If a voluntary assignment is valid, all the property of the assignor not exempt from execution which he owned at the time, passed to the assignee. *Freydendall* v. *Baldwin*, 103 Ill. 328; *Caldwell's Bank* v. *Crittenden*, 66 Iowa, 240.

An assignment of all one's attachable property, which is intended to close up one's business, and does so at once, is a general assignment. *Murrey* v. *Noyes*, 26 Vt. 473; *Noyes* v. *Hitchcock*, 29 id. 36; *Hott* v. *Bancroft*, 30 Ala. 250; *Dana* v. *Lull*, 17 Vt. 390.

When a debtor has made a general disposition of all his property and effects, and suspended his whole business in consequence thereof, thereby declaring insolvency, his act in so doing constitutes a voluntary assignment under the statute, and it is immaterial whether that act be effectuated by one or more instruments, provided they are parts of one and the same transaction, in and by which the debtor disposes of his whole property. *Martin* v. *Hausman*, 14 Fed. Rep. 160; *llogg* v. *Richardson*, 19 id. 72; *Clapp* v. *Dittmann*, 21 id. 15; *Clapp* v. *Nordweys*, 25 id. 72; *Freund* v. *Yaegerman*, 26 id. 812; *Weil* v. *Pollock*, 30 id. 813; *Sexton* v. *Anderson*, 95 Mo. 382; *Downing* v. *Kintzing*, 2 S. & R. 326; *Van Vleet* v. *Slawson*, 47 Barb. 317; *Holt* v. *Bancroft*, 30 Ala. 200; *Livermore* v. *McNair*, 34 N. J. Eq. 478; *Watson* v. *Bagaley*, 12 Pa. 164; *Miners' Nat. Bank's Appeal*, 57 id. 193; *Burrows* v. *Lehndorf*, 8 Iowa, 96; *Cole* v. *Dealham*, 13 id. 551; *Van Patten* v. *Burr*, 52 id. 518;

*Heineman* v. *Hart*, 55 Mich. 64; *Harkrader* v. *Leiby*, 4 Ohio St. 602; *Crow* v. *Beardsley*, 68 Mo. 435; *State* v. *Benoist*, 37 id. 501; *Dickson* v. *Ramson*, 5 Ohio St. 224; *Englebert* v. *Blanjot*, 2 Whart. 240; *Murray* v. *Noyes*, 26 Vt. 471; *Thompson* v. *Heffner*, 11 Bush, 359; *Perry* v. *Holden*, 22 Pick. 269; *Bonns* v. *Carter*, 20 Neb. 566; *Danner* v. *Brewer*, 69 Ala. 191; *Winner* v. *Hoyt*, 66 Wis. 227; *Page* v. *Smith*, 24 id. 368; *Wilks* v. *Walker*, 22 S. C. 108; *Owen* v. *Aris*, 26 N. J. L. 22; *Fruitt* v. *Caldwell*, 3 Minn. 364; *Murphy* v. *Caldwell*, 50 Ala. 461; *Wallace* v. *Wainright*, 87 Pa. St. 263; *Johnson's Appeal*, 103 id. 378; *Taylor* v. *Taylor*, 78 Ky. 470; *Sexton* v. *Anderson*, 95 Mo. 373; *Imp. Co.* v. *Thurman*, 29 Mo. App. 189.

The want of acknowledgment or recording does not invalidate an assignment. *Nicoll* v. *Spowers*, 105 N. Y. 1; *Fuller* v. *Hasbrouck*, 46 Mich. 78; *Farwell* v. *Crandall*, 120 Ill. 70; *Perkins* v. *Zarracher*, 32 Minn. 71; *Caldwell's Bank* v. *Crittenden*, 66 Iowa, 237; *Warner* v. *Jaffray*, 96 N. Y. 248; *Dawson* v. *Crossen*, 10 Ore. 41; *Hardcastle* v. *Fisher*, 24 Mo. 70.

Messrs. TENNEY, BASHFORD & TENNEY, and Mr. E. R. E. KIMBROUGH, also for the appellants.

Messrs. MOSES & NEWMAN, for the appellee:

As to the jurisdiction of the county court of the subject matter stated in the petition, see *Freydendall* v. *Baldwin*, 103 Ill. 325; *Preston* v. *Spaulding*, 120 id. 208; *Field* v. *Ridgely*, 116 id. 424; *Waterbury* v. *Hanchett*, 115 id. 220; *Farwell* v. *Crandall*, 120 id. 70; *Paddock* v. *Stout*, 121 id. 571.

The jurisdiction of the county court is a special, statutory and limited jurisdiction. *Crandall* v. *Farwell*, 120 Ill. 70; *Wurtz* v. *Hart*, 13 Iowa, 515.

An assignment for creditors must transfer all the assignor's estate and property. If less than all is assigned, the instrument will become a deed of trust, securing the debt. *Imp. Co.* v. *Thurman*, 29 Mo. App. 189; *Caldwell's Bank* v. *Crittenden*,

15—138 ILL.

66 Iowa, 237; *Joffray* v. *Greenebaum*, 64 id. 492; *Munsey* v. *Logan*, 27 Mo. 528; *Downing* v. *Kinsing*, 2 S. & R. 326.

Mr. J. B. MANN, also for the appellee:

As to difference between an assignment for creditors and a mortgage or deed of trust, see Burrill on Assignments, sec. 6.

The right to redeem shows the deed to be a mortgage. *Gage* v. *Cheesboro*, 49 Wis. 486; *Insurance Co.* v. *Webster*, 83 Ill. 470.; Jones on Chattel Mortgages, secs. 19, 22, 285, 323.

A mortgage is not objectionable as being an assignment for the benefit of creditors, which is made to a creditor to secure a debt to him and the debts of other creditors named. Jones on Chattel Mortgages, sec. 355; *Carter* v. *Rewey*, 62 Wis. 552; *Bragg* v. *Jerome*, 7 Mich. 145; *Gage* v. *Cheesboro*, 49 Wis. 486; *Jaffray* v. *Greenebaum*, 64 Iowa, 492; *Caldwell's Bank* v. *Crittenden*, 66 id. 237; *Gage Co.* v. *Parry*, 69 id. 605; *Brooks* v. *Marbury*, 11 Wheat. 88.

Whether the want of an acknowledgment rendered the deed abortive, see *Zimmerman* v. *Willard*, 114 Ill. 364; *Preston* v. *Spaulding*, 120 id. 208; *Epwright* v. *Nickerson*, 78 Mo. 482; *Hardman* v. *Bowen*, 39 N. Y. 196; *Britton* v. *Lorens*, 45 id. 51; *Fairchild* v. *Geogeme*, 16 Abb. Pr. 23.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The material question in this case is, whether or not the instrument which, on December 18, 1887, was executed and delivered by Silverman to Cohen, is such a voluntary assignment as will, under the act of May 22, 1877, (Laws of 1877, p. 116,) confer jurisdiction and authority upon the county court to supervise the execution of the trusts created by or growing out of such instrument, and the administration of the property thereby conveyed.

By the act its provisions are made applicable "in all cases of voluntary assignments hereafter made for the benefit of creditor or creditors." In the late case of *Farwell et al.* v.

*Nilsson et al.* 133 Ill. 45, it was said: "The word 'assignment' had, at the time this statute was adopted, a well defined meaning, understood by all the people, and it has no different meaning in said act. According to the common acceptation of the term it is a transfer, without compulsion of law, by a debtor, of his property to an assignee, in trust, to apply the same, or the proceeds thereof, to the payment of his debts, and to return the surplus, if any, to the debtor." And in the same case it was said: "The mere form of the instrument is, no doubt, immaterial, provided the operation of it is to create a trust in the property conveyed, for the benefit of creditors, and if such is the purpose and design of the instrument, then any preference in it, or which, by construction of law, forms a part of it, is in fraud of the statute, and void." In *Preston et al. v. Spaulding et al.* 120 Ill. 217, it was said: "The statute is silent as to the form of the instrument or instruments by which an insolvent debtor may effect an assignment." And in one of the earlier cases that arose under the statute, (*Hanchett v. Waterbury,* 115 Ill. 220,) it was said "that the right and power of a failing debtor to pass the title of his effects to an assignee remain as they did before the statute." In the case of *Weber v. Mick et al.* 131 Ill. 520, in speaking of the subject of a voluntary assignment for the benefit of creditors, we said that such an assignment was and had "always been understood to be an instrument voluntarily executed by a failing debtor, by which he assigns to some third person, as assignee or trustee, the whole, or sometimes the bulk, of his property, to be by such trustee distributed among the assignor's creditors in satisfaction of their demands." In *Schroeder v. Walsh,* 120 Ill. 403, this court, in speaking of such assignments and of the statute of 1877, said: "That act applies only to conveyances of property to an assignee or trustee, in trust, to convert the same into money for the benefit of creditors of the assignor." And to this statement was added this further clause: "Which can now only be made under that law."

Since the right and power of the failing debtor to pass title to an assignee remain as they did before the statute, and since the mere form of the instrument is immaterial provided it operates to create a trust for the benefit of creditors, and since the word "assignments" found in the act has no different meaning than that which it had at the time the statute was adopted, and prior thereto, it would seem that the expression, "which can now only be made under that law," signifies, merely, that all voluntary assignments for the benefit of creditors must be carried into execution in conformity with the principles and rights established by that act, and that administration of the trusts may be enforced by the court to which the act gives jurisdiction over the particular subject matter of such voluntary assignments.

Waiving, for the present, the question of the capacity of Silverman to make a voluntary assignment, and the fact that the instrument executed purported to assign certain specified property and contained no general terms that would include other property, and waiving, also, various matters of supposed non-compliance with statutory requirements, we think it manifest, as well from the citations made above from former decisions of this court as from the doctrine laid down in the books and in cases adjudicated in other courts, that said instrument was an assignment for the benefit of creditors, and not a mere mortgage, security or pledge. By it, Silverman sells, assigns, transfers and sets over unto Daniel Cohen the goods and chattels therein mentioned, and it provides that said Cohen shall take, hold and receive the goods and chattels thereby conveyed, in trust, to sell the same at public sale, in such quantities as he may see fit, and out of the proceeds pay expenses and certain debts in a specified order of payment, and it contains a proviso that the trustee shall not sell any more of said goods, and property than is sufficient to pay said indebtedness and expenses. Some of the specified debts were due and some were not due. The instrument, on its face, was an absolute trans-

fer of the whole interest, legal and equitable, in the property. In express terms it created a trust in favor of certain creditors of Silverman other than Cohen. The fact that a debt due Cohen was also provided for, did not take from the instrument its character of an assignment for the benefit of creditors. A creditor of the assignor may be the assignee in such an assignment. There is no condition of defeasance, providing for the return of the property upon the payment of the debts mentioned. At most there was an express provision for a resulting trust for any excess of assets over liabilities, and that much the law itself implied. A correct definition of an assignment for the benefit of creditors, as we understand the law, is given in the American and English Encyclopædia of Law, and it is this: "A voluntary transfer by a debtor of all or a part of his property to an assignee or assignees, in trust, to apply the same, or the proceeds thereof, to the payment of some or all of the assignor's debts, and to return the surplus, if any, to him." See vol. 1, pp. 845, 846, and authorities cited.

Since appellee claims title under the instrument of December 14, 1887, and appellants have no case in court except as based thereon, it would seem that the capacity of Silverman to execute the same must necessarily be admitted by both parties, and that the only issue between them in regard thereto can be in respect to its legal effect. The Assignment act of 1877 is not, in express terms, confined to debtors who either are in fact insolvent or contemplate insolvency. The expression, "assignment for the benefit of creditors," implies insolvency, and an inability on the part of the debtor to provide for the claims of his creditors in the usual way. It is to be presumed that a debtor who is or thinks he is solvent will not transfer his estate, and yield up all dominion over it, for the purpose of having it administered upon under the supervision of a court; and it is unreasonable to suppose that the legislature contemplated or intended that the provisions of the act should be applicable to a solvent debtor. In *Hanchett* v. *Water-*

*bury,* 115 Ill. 220, this court held that said act was, in its
framework and detail, essentially a general insolvent law, and
that it was so intended by the legislature. In *Gardner et al.*
v. *Commercial Nat. Bank,* 95 Ill. 298, it was held that a sol-
vent debtor could not make a valid deed of assignment for
the benefit of creditors. It follows that the allegation of the
assignor's insolvency contained in the petition is material to
the case made by the petition, but we think that the state-
ments of the answer, they being taken most strongly against
the pleader, sufficiently admit such insolvency.

The questions whether a parol assignment of property, or a
constructive voluntary assignment of property for the benefit
of creditors, are voluntary assignments for the benefit of cred-
itors within the contemplation of the Assignment act, are dis-
cussed at great length in the briefs and arguments; but since
here the assignment was by deed, though not in the usual
form, duly signed, sealed and delivered, and a trust for the
benefit of creditors was created therein in direct and express
language, no such questions are involved in the record, and
we must decline to consider them.

The instrument here in question transferred to the assignee
certain specified goods and chattels, and it contained no gen-
eral terms that would embrace other property. A general
assignment of all property is the most usual species of volun-
tary assignments. From the fact that the act of 1877 provides
that the debtor shall annex to the assignment "an inventory,
under oath or affirmation, of his, her or their estate, real and
personal," an implication, more or less strong, arises that the
statute contemplates general assignments, only. This assign-
ment is not, upon its face, a general assignment. If, from
the implication above noted, and from any implication that
might arise from the use of the term "voluntary assignments,"
or otherwise from the provisions of the act, it were deducible
that general assignments, alone, are within the statute, yet
the absence of general terms in the deed could be holpen by

averment and proof. In *United States* v. *Howland,* 4 Wheat. *108, Chief Justice MARSHALL said: "The deed then conveys only the property contained in the schedule, and the schedule does not purport to contain all the property of the parties who made it. In such a case, the presumption must be that there is property not contained in the deed, unless the contrary appears. The *onus probandi* is thrown on the United States.   *   *   *   The depositions do not aid the deed. The question whether the whole property is assigned is still left to conjecture, and this being the fact on which the preference of the United States is founded, ought to be proved. Not being proved, the court is of opinion that it is not a case in which it can be claimed." In *United States* v. *Dayton,* 5 Mason, 280, Justice STORY said: "I agree at once to the reasoning at the bar, that if the assignment be in fact of all the debtor's property, although it does not so appear upon the face of the instrument, the priority of the United States attaches. The same rule applies if a small part be left out for the purpose of fraudulent evasion of that priority."

In the case at bar the petition avers that the stock of goods sold, assigned and transferred to Daniel Cohen composed all the property and estate of any value belonging to George Silverman. The answer neither admitted nor denied this allegation, but stated that the defendant, Cohen, was not "able to say whether said stock constituted all of Silverman's property." Without the statute itself operated to convert the partial assignment into a general assignment, the chancery rule which is applicable to the case made it incumbent upon the petitioner to prove said averment before it could make in his favor, and he did not do so.

Is a voluntary assignment which upon its face is but a partial assignment, so enlarged by the statute as to make it a general assignment? It would be entirely competent for the legislature to provide that every voluntary assignment for the benefit of creditors, whether a general assignment on its face

or purporting to be a partial assignment merely, should be deemed and taken to include all the property and estate of the assignor not exempt by law. This statute does not so provide in express terms, and the question arises whether or not it so provides by implication. There are several provisions of the act which seem to be somewhat indicative of such an intention; but these and all other provisions of the statute must be so interpreted, if it is reasonably possible, as that due effect shall be given to all the provisions of the act. Section 1 provides that "in all cases of voluntary assignments" the debtor or debtors "shall annex to such assignment an inventory, under oath or affirmation, of his, her or their estate, real and personal, according to the best of his, her or their knowledge; * * * but such inventory shall not be conclusive as to the amount of the debtor's estate." Since the statute uses the words "all cases," and predicates of "all cases" the annexing of "an inventory, under oath or affirmation, of his, her or their estate, real and personal," it affords plausible ground for the claim, that by force of the statute all voluntary assignments are general assignments, and cover all property of the assignor or assignors that is not exempt by law. But it is to be noted that section 8 of the act provides "that no assignment shall be declared fraudulent or void for want of any list or inventory as provided in the first section of this act." This latter provision, and the omission of any negative words in the clause of section 1 under consideration, indicate that the provision in said clause for a sworn inventory, "in all cases," of "his, her or their estate, real and personal," is directory, only. What is, however, of much more moment, is that section 1, and in the last clause of the same sentence in which is found the provision for such inventory "in all cases," it is expressly stated that "such assignment shall vest in the assignee or assignees the title to any other property, not exempt by law, belonging to the debtor or debtors at the time of making the assignment, and *comprehended within the general*

*terms of the same."* This is a legislative declaration of the legal effect of, and of the limitation to be placed upon, a voluntary assignment. The expression of one thing is the exclusion of another. It is very manifest that a deed of assignment passes the title of all property specified in the deed, or in the inventory annexed thereto. What other, if any, property or estate does it transfer? Said last clause answers this question by saying, "any other property, not exempt by law, belonging to the debtor or debtors at the time of making the assignment, that is *comprehended within the general terms of the assignment."* It must be presumed that if it had been the legislative intention that by force of the act the title to *all* property of the assignor or assignors, not exempt by law, should vest in the assignee or assignees, such intention would either have been expressed in plain and apt words, or that, at the very least, language would have been used which by a liberal interpretation could be construed to include all such property. Here, after the legislature had said, "such inventory shall not be conclusive as to the amount of the debtor's estate, but such assignment shall vest in the assignee or assignees the title to any other property, not exempt by law, belonging to the debtor or debtors at the time of making the assignment," it was not satisfied with the language employed, and added these words of limitation: "and comprehended within the general terms of the same." These words of restriction can not be ignored. It must be presumed that they were used intentionally, and for a purpose. Their natural and necessary effect is to limit the scope of every voluntary assignment to the property that is either named in the deed, or mentioned in the inventory, or comprehended within the general terms of description found in the assignment.

An argument that the act makes every voluntary assignment, though partial on its face, a general assignment of all property, is deducible from the provisions in section 8 that the county court *may* compel the debtor or debtors "to answer,

under oath, such matters as may  *  *  *  be inquired of him, her or them," and that "such debtor or debtors *may* * * * be fully examined, under oath, as to the amount and situation of his, her or their estate." But a few suggestions will effectually dispose of such argument. Said provisions are merely permissive, and simply give to the county court a discretionary power, to be exercised only in a case wherein the circumstances of such particular case demand or call for its exercise. When property covered by the particular descriptions found in the deed or the inventory, or comprehended within the general terms of the assignment, is not discovered or delivered to the assignee, the authority delegated in this section 8 may properly be invoked. That under this section the county court is not authorized, in the case of a partial assignment and in the absence from the terms of the assignment of general descriptions of or calls for property, to hold the assignment to be a general assignment of all property not exempt by law, is plainly indicated by the concluding clause of the section, that the county court "may compel the delivery to the assignee or assignees of any property or estate *embraced in the assignment.*"

Upon a careful consideration of all the various provisions of the act of 1877, we are of opinion that a voluntary assignment which is upon its face a partial assignment, and which does not in fact purport to transfer substantially all the property of the debtor, and which contains no general terms descriptive of property, is not, by force of the act, converted into a general assignment of all the property of the debtor that is not exempt by law.

It not appearing that the assignment at bar is a general assignment, the question necessarily arises, is a partial assignment an assignment within the purview of the Voluntary Assignment act? In *Weber* v. *Mick et al.* 131 Ill. 520, in discussing said act, we quoted from Burrill on Assignments this language: "Assignments may be made either to the

whole body of the creditors or to particular creditors, or they may be of all or a part of the debtor's property; but unless a trust is thereby created by the assignor, in favor of creditors, such conveyances are not within the class of instruments known as assignments for creditors." In section 1 of the act are found these expressions: "In *all* cases of voluntary assignments," and "any other property * * * comprehended within the *general* terms of the same,"—*i. e.*, the assignment. In section 8 occurs this expression: "And may compel the delivery to the assignee or assignees of any property or estate *embraced in the assignment.*" Section 9 provides for an additional inventory of property "under said assignment." Section 11 gives authority to the assignee or assignees "to dispose of all estate, real and personal, *assigned.*" The power delegated by section 12 to the new assignee who succeeds to the trust, is "to execute the trust *embraced in such assignment.*" By section 14 all debts and liabilities are required to be paid *pro rata,* "from the *assets thereof,*"—*i. e.*, of the assignment. These and like expressions in the act, taken in connection with the context in which they are found, indicate that the General Assembly recognized the fact that in some cases of assignment an assignor would have "other property" which was not comprehended within the terms of the assignment.

It is conceded by counsel upon both sides that almost all of the sections of our Assignment act are literal copies of sections in the general assignment law of Iowa. In the Iowa statute, however, the words found in the first section are these: "*General* assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of *creditors.*" In our statute, in lieu of said language, these words were substituted: "In *all* cases of *voluntary* assignments hereafter made for the benefit of *creditor or creditors.*" It must be presumed that these changes in phraseology were for a purpose, and indicative of the legislative will. The Iowa act operates upon *general* assignments, and makes every general assignment void.

that is not for the benefit of all creditors in proportion to their claims. Our statute regulates "*all* cases of *voluntary* assignments," whether such assignments purport to be made for the benefit of all creditors or only some of them, or merely "one" creditor, and it operates upon the estate, real and personal, that is designated in the instrument of assignment, or in the inventory annexed thereto, or that belongs to the debtor, is not exempt and is "comprehended within the general terms" of the instrument, and upon such property only; and instead of rendering the assignment void for preferences, it avoids the preferences, and distributes the assets assigned, *pro rata,* upon all debts and liabilities of the assignor.

Since the act of 1877 regulates "all cases of voluntary assignments," the assignment now at bar, even if but a partial assignment, is, if otherwise a valid voluntary assignment, to be governed by and administered under the provisions of that act. This conclusion seems to necessarily follow from a consideration of the provisions of the act. There is reason and justice and equity in the rule thus established by the statute. To illustrate:—If A is in failing circumstances, and insolvent, and is owner of a store house and fixtures, and a stock of merchandise therein, and of notes and accounts growing out of the business carried on there, and is also the owner of a farm, and of the live stock and agricultural implements and machinery connected therewith, and of the crops growing thereon, no reason is perceived why he may not be permitted to assign the estate and property first mentioned, and have it converted into money and the proceeds distributed under the supervision of the county court, *pro rata* upon his indebtedness, and he still retain title to the farm and property connected therewith, and continue his business of farming. Of course, the property retained, so far as not exempt by law, would still be liable to sale on execution, if his creditors, or any of them, saw fit to avail themselves of their legal rights in that behalf. An arrangement such as suggested might in very

many instances, where there was trust and confidence, be for the pecuniary advantage of both the debtor and his creditors. The disposition made of that portion of the property assigned would, in such case, be eminently just and equitable, and in exact conformity with the substantial principles established by the Voluntary Assignment law,—*i. e.*, that the administration should be under the supervision of a court, and the distribution *pro rata* upon all debts and liabilities. It is difficult to see how the execution of such an assignment is in fraud of the statute, or in derogation of its substantial requirements ; and if an insolvent debtor, in fraud of the act and for the purpose of creating illegal preferences, assigns a portion of his property to a trustee, he is bound to know that under the law the assignment will work for the benefit, *pro rata*, of all his creditors.

That the county court has jurisdiction and authority to administer in case of a partial assignment, is consistent with prior announcements of this court that the right and power of a failing debtor to pass the title of his effects to an assignee remain as they did before the statute, but that the power to control the distribution and beneficial enjoyment of his property upon such a transfer of the title is essentially different from what it was before the statute, and other like announcements of the law, is in conflict with no former decision of the court, and is also consistent with and justified by the language of the act itself, and tends to advance the remedy provided by that act and effectuate the legislative intention. On the other hand, if a partial assignment to a trustee for creditors is not within the purview of the act, then an insolvent and failing debtor may, prior to his retirement from business, transfer a moiety or some substantial part of his property to a trustee, and for the benefit of only one or a few of his creditors, and leave the other moiety or part of his assets subject to process of the courts at the instance of his other creditors, and thus in

reality make an assignment with preferences, and successfully and with impunity evade and defraud the statute.

Our conclusion, then, is, that the mere fact that it does not affirmatively appear that the assignment embraced all the property of Silverman, does not prevent the jurisdiction of the county court from attaching, or prevent the estate assigned being distributed in that court in conformity with the rule of equality established by the statute.

It is urged that section 1 of the act provides, in express terms, that "every assignment shall be duly acknowledged and recorded," etc., and that this assignment was not acknowledged and was not recorded, and that by reason of such failure to record and want of acknowledgment the instrument did not become a voluntary assignment under the statute, and the jurisdiction of the county court to compel the due execution of the trusts supposed to be created by the instrument and by force of the statute did not attach. It is to be noted that no negative words are used in the act declaring the invalidity of assignments not acknowledged and recorded. The general rule applicable where no negative words are employed in the statute is thus stated in Cooley's Constitutional Limitations, (* 78): "Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by a failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it may still be sufficient, if that which is done accomplishes the substantial purpose of the statute."

The Iowa statute, from which our act was largely taken, is much more definite than ours in respect to the matters of acknowledgment and recording, and prior to the adoption of our statute the Supreme Court of that State held that it was not necessary that a deed of assignment conveying personal property should be acknowledged and recorded, where possession

accompanied such conveyance. (*Meeker* v. *Saunders*, 6 Iowa, 61.) In *Zimmerman* v. *Willard et al.* 114 Ill. 364, the assignment was in fact acknowledged, and the question here at issue was not in the case, and it was merely held that the certificate of acknowledgment then before the court was in substantial compliance with the act relating to voluntary assignments. In *Myer* v. *Fales' Sons & Co.* 12 Bradw. 351, it was held that an assignment of personal property takes effect at the time of the delivery to the assignee of the deed of assignment and the property, and it was there said by CASEY, J.: "When the insolvent debtor makes and acknowledges the deed of assignment, and delivers it, with the property, to the assignee, what more can he do or is he required to do? He does not retain the deed of assignment in his possession. He has no control over it, and he could not have it recorded. That duty devolves upon the assignee. If the latter is guilty of misconduct or bad faith, or is tardy in the performance of his duty, it should not be said that the rights of the insolvent debtor or the creditor are thereby changed or prejudiced."

The Assignment act was intended mainly for the benefit of the creditors of the insolvent. The creditors of Silverman are not here objecting to the want of a certificate of acknowledgment, or because the deed was not recorded. On the contrary, they are seeking to obtain, under the deed, the beneficial interests that the legislature intended should be conferred upon them by the statute. The petitioners are creditors of Silverman to a considerable amount, and the record shows that some twenty-one different firms and individuals, also creditors of Silverman, joined in a supplemental petition, in which they "prayed as in the petition of John V. Farwell & Co." Silverman and Cohen are the defendants to the petition. Silverman executed the deed of assignment to Cohen, as assignee, and delivered it to him, and with it delivered possession of the assigned property, and Cohen took and retained the property, by virtue of the deed, and is even now claiming title under it.

They have affirmed and are affirming the validity of the deed as against the creditors. They can not be allowed to blow both hot and cold with one breath. They are equitably estopped from now saying the instrument is not the deed of Silverman, or from objecting to it because it was not acknowledged and recorded. No matter what they call the instrument, the law makes it a voluntary assignment. Nor is it a matter of any moment that they supposed it was an instrument for the benefit of a few chosen creditors, for the statute enlarged the trust and made it inure to the benefit of all the creditors. It was the statutory duty, then, of Silverman to acknowledge it, and the statutory duty of Cohen, before accepting it and taking possession of the property, and assuming the trust created thereby, to see that it was properly acknowledged and have it recorded. Having failed in the performance of their bounden and statutory duties in that behalf, th~y should not now be allowed to plead their own shortcomings to the detriment of the rights and equities of the beneficiaries in the trust. The deed made appellee a trustee, and he accepted the trust, and reduced the trust property to his own possession. Under the statute, the creditors were the beneficiaries in that trust. It is manifest that the trustee can not now set up his own culpable negligence, or willful disregard of duty, for the purpose of despoiling his *cestuis que trust* of their interest in the trust estate.

Suppose the provisions of the statute in respect to the execution, acknowledgment, recording, etc., of the deed of assignment have not been complied with, what then? The creditors are not complaining on that account. The claims of no execution creditor or attaching creditor or stranger to the deed are involved. Who, then, is authorized to take advantage of the acts of omission of the insolvent and his assignee? In *Farwell et al. v. Crandall*, 120 Ill. 70, this court said: "It is an error to suppose that the jurisdiction of the county court depends upon the validity of the deed of assignment. For the

purpose of jurisdiction, it is sufficient that there has been an assignment in fact for the benefit of creditors. This is conclusively shown by the well recognized doctrine that a fraudulent assignment is voidable at the election of the creditors, only. Hence, if the latter do not object, the court may nevertheless go on and administer the assets." Like doctrine should be held in the case now at bar.

An assignment already made is a preliminary requisite to the exercise of any jurisdiction whatever by the county court. The sole power of the court is to supervise and regulate the administration of a trust previously created by the act of the assignor. In *Hanchett* v. *Waterbury*, 115 Ill. 220, it was held by this court that upon the making, filing and recording of the assignment, with the lists and schedules annexed, the county court wherein such assignment is filed and recorded, by operation of law, at once acquires jurisdiction over and becomes possessed of all the property and estate embraced within the assignment. The duty of filing and recording the assignment, and an inventory and valuation of the estate assigned, is imposed upon the assignee. But suppose he fails or refuses to perform any or all these duties, does the assignment fall stillborn on that account? We think not. The assignee is not the only party interested in the assignment. The assignor has an interest that the property assigned should be paid in satisfaction of his debts. All the creditors of the assignor are interested in the matter of the assignment, and have a legal right to receive their proportionate shares of the assets.

Section 14 of the act confers upon the county court "full authority and jurisdiction to execute and carry out the provisions" of the act; section 7 provides that the assignee, in the execution of assignments, shall at all times be subject to the order and supervision of the county court, and that said court may, by citation and attachment, compel the assignee to file reports of his proceedings, and of the situation and condition of the trust, "and to proceed in the faithful execu-

tion of the duties required by this act;" and section 12 provides, that in case any assignee shall fail and neglect, for the period of twenty days after the making of any assignment, to file an inventory and valuation, and give bond, as required by the act, it shall be the duty of the county judge of the county where such assignment may be recorded, on the application of any person interested, as creditor or otherwise, to appoint one or more discreet and qualified person or persons to execute the trust embraced in such assignment, etc.

The provision of section 1 of the act is, that "the assignment shall be recorded in the county where the person or persons making the same reside, or where the business in respect of which the same is made has been carried on." The expression in section 12, "where such assignment *may* be recorded," means the county where it is recorded, or if not recorded, then the county where it is legally permissible to record it. The county court referred to in the act, and the county judge referred to in section 12, are the county court and the county judge of the county in which the assignor resides or in which the business in respect of which the assignment is made has been carried on; and if the residence happens to be in one county and the *situs* of the business in another, then the jurisdiction attaches to such one of said county courts and to such one of said county judges as first obtains jurisdiction of the subject matter. It may be said in answer to suggestions made, that there is no intimation in the record, or otherwise, that the circuit court or chancery court, or any court other than the Vermilion county court, had or claimed jurisdiction of the subject matter of the assignment here under consideration, either before or since the institution of this proceeding, except upon the appeal prosecuted herein to the circuit court from the judgment of the county court, and therefore no question of a conflict of jurisdiction arises, and it will be time enough to dispose of that matter when it does arise.

It may also be said, that courts are not accustomed to take jurisdiction or to act of their own motion, and it is not to be presumed that the county court or county judge will act in a matter which is not properly brought before it or him. No reason is perceived why the presentation of a petition, such as that found in this record, made by a creditor of the insolvent debtor, or by some other party in interest, is not a proper and competent way in which to call upon the court to act in the premises. That an assignment, in fact, for the benefit of creditors has been made, that a period of twenty days has elapsed since the making of such assignment, and all other facts deemed essential to put the court in motion, may properly enough be shown, *prima facie*, by such petition verified by affidavit. Assuming that the assignee named in the deed of assignment is a necessary party to any proceeding instituted for the purpose of establishing the trust, and removing him from office, and appointing another assignee in his place and stead, we think a citation may properly issue against him. If, as appears in this record, he has entered upon the execution of the trust to the extent of accepting the deed of assignment and taking and holding possession of the assigned property, and assuming to exercise the power of selling and disposing of it, he may, although he has not become an assignee *de jure* under the statute, by complying with its requirements, nevertheless be regarded as an assignee *de facto* or assignee *de son tort*, and brought into court by citation or attachment, under the provisions of section 7 of the act.

The act, as we have frequently held, is remedial, and should be liberally construed, and so as to remedy the evils intended to be cured and advance the remedy. When a voluntary assignment is made, and the property assigned has passed into the possession of the assignee, such property is thereby brought within the jurisdiction and under the administrative control of the county court. (*Preston* v. *Spaulding et al.* 120 Ill. 208.) It is true, the making of the assignment must precede the

exercise of jurisdiction; but when a *prima facie* case of a voluntary assignment is exhibited to the court, it then devolves upon such court to judicially investigate such case, and determine whether or not a voluntary assignment has in fact been made, whether or not the particular instrument in question is such an assignment, and whether or not it was executed by the supposed assignor, and in the event it is judicially ascertained that it is such an assignment, then the duty is imposed upon the court to execute and carry out the provisions of the Voluntary Assignment act in respect thereto. In the very nature of all judicial proceedings, the court in which any such proceeding is instituted must, at the very threshold, meet and determine, either expressly or by necessary implication, this question of jurisdiction.

Our conclusions upon the whole matter are, that in the findings, judgments and orders made and entered by the county and circuit courts there was no substantial error, and that they should be affirmed. Inasmuch as the Appellate Court reversed the same, such judgment of reversal is erroneous, and should be and is reversed, and the cause is remanded to the county court for further proceedings.

*Judgment reversed.*

Mr. Chief Justice Magruder, dissenting:

George Silverman, of Danville, Vermilion county, signed a written instrument, which recited that he was indebted to certain persons and was desirous of securing the payment of such indebtedness and which purported to sell, assign and transfer a stock of goods and certain personal property in a store building in Danville, to Daniel Cohen, in trust, to sell the same, and out of the proceeds of sale, pay the indebtedness. Cohen assumed the trust and was proceeding to execute it as directed. The instrument, however, under which he acted, was not acknowledged or recorded, as required by sections 1 and 3 of the act in reference to voluntary assignments, passed by the

Legislature of this State and approved May 22, 1877, and he did not file an inventory and appraisement with the clerk of the County Court, nor enter into bond before the clerk of such court, as required by section 3 of the act. Thereupon appellants, as creditors of Silverman, applied to the County Court for the appointment of a new assignee under section 12 of said act, and obtained an order removing Cohen, and appointing John G. Thompson as assignee in his place.

The instrument in question may be conceded for the purposes of this case to be an assignment, but inasmuch as it was not acknowledged or recorded, either in the recorder's office or the County Court, it was not such an instrument as called for or justified the exercise of the power of appointment conferred upon that court by section 12.

A voluntary assignment for the benefit of creditors, as spoken of in the Act of 1877 has no other or different meaning than it had before the passage of that act. Long before 1877 such an assignment had a well defined signification in this State and in all other States. According to the common acceptation of the term it is a transfer without compulsion of law by a debtor of his property to an assignee in trust, to apply the same or the proceeds thereof, to the payment of his debts, and to return the surplus, if any, to the debtor. As to the form and contents of it, it has always been understood in this State to be a written deed of conveyance, executed by the assignor as party of the first part, to the assignee, as party of the second part, reciting the grantor's indebtedness and inability to pay, and conveying his property, real and personal, by apt words of sale and transfer to the assignee in trust, to take possession of and sell the same, and to collect the outstanding debts, and out of the proceeds to pay the creditors. Sometimes it provided for preferences, and sometimes not. Schedules were generally attached to the deed, describing the property and naming the creditors.

That such was the understanding as to its general form and character, will appear from an examination of the following cases decided by this court. · *Cross* v. *Bryant,* 2 Scam. 36; *Conkling* v. *Carson,* 11 Ill. 503; *Kimball* v. *Mulhern,* 15 id. 205; *McIntire* v. *Benson,* 20 id. 500; *Wilson* v. *Pearson,* 20 id. 81; *Bowen* v. *Parkhurst,* 24 id. 257; *Sackett* v. *Mansfield,* 26 id. 27; *Myers* v. *Kinzie,* 26 id. 36; *Finlay* v. *Dickerson,* 29 id. 9; *Pierce* v. *Brewster,* 32 id. 268; *Whipple* v. *Pope,* 33 id. 334; *Field* v. *Flanders,* 40 id. 470; *Gibson* v. *Rees,* 50 id. 383. Such a deed of assignment as is above described, is referred to and held good in *Cross* v. *Bryant, supra;* and in *Sackett* v. *Mansfield, supra,* such an one is thus spoken of by this court: "This deed made an exhibit in the cause, fulfills in our judgment, all the requirements of a valid deed of assignment. * * * It is for the benefit of the assignor's creditors," etc.

The first sentence of the first section of the Act of 1877, assumes that the meaning of a voluntary assignment for the benefit of creditors is already well understood and, therefore, no new definition of the term is attempted. A study of the language, in which the various provisions of the law are expressed, will demonstrate that its framers intended to designate just such a deed of assignment as is described in the foregoing decisions.

The assignment contemplated by the act, must be in writing. This is so, because it is required to be acknowledged and recorded and it is so, whether the requirement to acknowledge and record be directory or mandatory, because the fact that it is spoken of as an instrument that may be acknowledged and recorded, shows that it must be in writing.

The assignment, contemplated by the act, must be one single instrument of transfer. It is so treated and spoken of in almost every section. The debtor is required to annex to it an inventory of his property, and a list of his creditors, and although the absence of these does not make it fraudulent or void, yet an instrument, to which an inventory and list may be

attached, cannot very well be constructed out of a number of acts done by the debtor or out of a number of notes, mortgages or other documents signed by him, and passed out of his hands into the possession of different parties. The assignee is required to give notice of the assignment, by mail, and by publication, to the creditors, and it would hardly be possible to write or print a notice of an assignment which does not come into existence until it is constructed out of acts and circumstances by the determination of a judicial tribunal.

The contents of the assignment mentioned in the act must be substantially the same as those of the ordinary deed of assignment referred to in the text books and judicial decisions. It is spoken of in sections 2 and 12 as an instrument in which an assignee is "named" and in section 1, as an instrument by the terms of which title to property becomes vested in the assignee. If it vests title to property not named in the attached inventory, but "comprehended within the general terms of the" assignment, it must certainly contain apt words by which a grantor therein named transfers to a grantee therein named the title to property described in specific terms in the assignment, or in the inventory attached to it. It is spoken of in sections 3 and 12 as an instrument, by which a trust is "confided" and in which a trust is embraced, and in sections 1 and 3 as an instrument made for the benefit of creditors and authorizing the collection of debts and the sale of property.

The act contemplates no such thing as a constructive assignment.

The thing about the act, which is new, is the relation which it brings about between the assignment and the County Court. By section 18, of article 6, of the Constitution, County Courts are made courts of record and are given original jurisdiction in certain specified matters, of which the subject of voluntary assignments for the benefit of creditors is not one, "and such other jurisdiction as may be provided for by general law." Under the latter clause of said section 18, as thus quoted, the

Act of May 22, 1877, was passed by the Legislature. There-
fore, County Courts derive their power to deal with voluntary
assignments from an act of the Legislature and not from the
specific mention of that subject in the Constitution itself.
Hence, the jurisdiction conferred upon them by the Act of
1877, is a special statutory jurisdiction, and must be exer-
cised in the mode prescribed by the statute.

The act in question makes a previously executed assignment
the basis and foundation of the jurisdiction of the County
Court.   An assignment already made is a preliminary requi-
site to the exercise of any jurisdiction whatever by that court.
The sole power of the court is to oversee and regulate the ad-
ministration of a trust, which has been created independently
of it, and without its aid.   It acts upon an instrument which
has been prepared for it in advance.

The County Court is mentioned for the first time in section 3,
after the mode of executing the assignment is provided for in
section 1, and after the assignee is directed ·by section 2 to
notify the creditors to present their claims to him.   The per-
son, who is required by section 3 to file an inventory and ap-
praisement with the clerk of the County Court, is the assignee.
An assignee is defined by Bouvier in his law dictionary to be
"one to whom an assignment has been made."   The existence
of an assignee presupposes the existence of an assignment, to
which he owes his appointment.   He is to file an inventory,
etc., of "said estate."   The words "said estate" refer back to
"the debtor's estate" mentioned in section 1, to which the as-
signee had obtained title through an assignment made before
the time for filing the inventory had arrived.   The form of
the assignee's bond prescribed by section 3 speaks of a trust
that had theretofore been confided to the assignee.

Section 7 provides, that assignees shall be subject to the
order and supervision of the County County Court "in the execution
of assignments," that is to say, in the performance of the
duties imposed by the assignment.   The assignment, specify-

ing and defining the duties to be performed, must have been previously executed. The power to decide whether any creditor, whose claim is questioned may or may not share in the assigned funds, and to determine how and when such funds shall be distributed, is conferred upon the County Court by sections 5 and 6 merely for the purpose of enabling the assignee to carry out more fully and fairly the provisions of the assignment theretofore made. The object of the act is to secure a more public and honest distribution of assigned effects by placing the assignee under the control of a judicial tribunal, while he is engaged in administering a trust, originally confided to him, not by the court but by the assignor. Section 14 confers full authority and jurisdiction upon County Courts "to execute and carry out the provisions of this act." Those provisions do nothing more than point out the mode in which the supervisory control here referred to is to be exercised.

Such being the object of the act, and such being the character of the jurisdiction conferred by it, it nowhere provides that an assignment can be made under the direction of the County Court, and nowhere confers upon that court the power to determine whether a particular instrument is an assignment or not, or whether an instrument admitted to be an assignment has or has not been executed by the assignor. That the County Court should stop to hear evidence and determine such matters as these was never contemplated by the act. The delay, created by such a course of procedure, would be wholly inconsistent with the summary character of the jurisdiction intended to be conferred. It would hinder that expeditious conversion of the assets into money and that speedy distribution of the funds, which it is the design of the law to secure.

It follows from the views herein expressed that, when the assignment is first brought under the supervisory control of the County Court, it should be accompanied by proper evidence of its execution. The court can not afford to lay its

hands upon an instrument alleged to be an assignment, if it be doubtful whether it was made by the debtor or not, or if the fact of its execution must be established by testimony and after a litigated contest. Inasmuch as the making of the assignment must precede the exercise of jurisdiction, proof that the assignment has been made must be present when the jurisdiction attaches, and as soon as it attaches. The certificate of acknowledgment is the best and highest evidence of the execution of the assignment, and is attached to and goes along with it, so that its execution is apparent at once upon the inspection of it.

For this reason the requirement contained in the last sentence of the first section of the act must be construed to be mandatory and not directory. That requirement is as follows: "Every assignment shall be duly acknowledged and recorded in the county where the person or persons making the same reside, or where the business in respect of which the same is made, has been carried on; and in case said assignment shall embrace lands, or any interest therein, then the same shall also be recorded in the county or counties in which said lands may be situated." The word "shall" is not held to be directory where an advantage is lost, a right destroyed, or a benefit sacrificed, either to the public or to any individual, by giving it that construction. *Wheeler* v. *City of Chicago,* 24 Ill. 105. The advantage to be derived by the creditors from an expeditious administration of the trust created by an assignment will be less apt to be lost, if the assignment is brought into the County Court, with a certificate of acknowledgment to show that the debtor made it, and a certificate of record to afford *prima facie* evidence of its delivery to the assignee. *Himes* v. *Keighblingher,* 14 Ill. 469.

The absence of negative words in the requirement above quoted is not conclusive that the statute was not designed to be mandatory. Cooley on Const. Lim. marginal page 75. Affirmative language may be so strong as to imply a negative.

Potter's Dwarris on Stat. p. 68; 1 Kent's Com. marg. p. 467, note B; *Dis. Town of City of Dubuque* v. *City of Dubuque,* 7 Iowa, 262. The use of the word "every" in the requirement that "every assignment shall be duly acknowledged," is broad enough to imply a negative of any other mode of proof, so far, at least, as the assignment is to be used as the basis of the jurisdiction of the County Court. A similar requirement in a New York statute has been held to be mandatory. *Hardeman* v. *Bowen,* 39 N. Y. 196; *Britton* v. *Lorenz,* 45 id. 51; *Fairchild* v. *Gwynne,* 16 Abbott's Pr. Rep. 23.

If an affirmative statute, which is introductive of a new law, direct a thing to be done in a certain manner, that thing shall not, even although there are no negative words, be done in any other manner. Potter's Dwar. on Stat. p. 72; *Hardeman* v. *Bowen, supra.* That the Act of 1877 introduced an entirely new law as to the mode of carrying out the provisions of voluntary assignments, and as to the character of the jurisdiction to be exercised by County Courts, there can be no question. But the particular requirement now under consideration introduced a new rule in regard to the acknowledgment and recording of assignments. Its language is, that, in case the assignment embraces lands, it shall also be recorded in the county where the land is situated. By implication, therefore, an assignment which does not embrace lands but personal property only, as in the case at bar, must be acknowledged and recorded.

For the first time in the history of the legislation of this State, a transfer of personal property not designed to be a mortgage or to have the effect of a mortgage, was required by the act of 1877 to be acknowledged and recorded. Mortgages of personal property had theretofore been required to be acknowledged in a specified manner under the chattel mortgage act, but such had not been the requirement in regard to any other kind of instrument transferring personal property except a chattel mortgage, or trust deed in the nature of a chattel

mortgage, etc. Rev. Stat. Chap. 95, Sec. 1. A voluntary assignment for the benefit of creditors, which embraces nothing but personal property, is neither a chattel mortgage nor a trust deed in the nature thereof, (*Crow* v. *Beardsley,* 68 Mo. 438,) and yet it must be acknowledged and recorded. Such acknowledgment may be taken anywhere, the limitation in section 1 as to the residence or place of business of the assignor having application to the recording only, and not to the acknowledgment of the instrument. *Zimmerman* v. *Willard,* 114 Ill. 364. Nor does section 1 require the acknowledgment of an assignment embracing only personal property to be any different from one which embraces both real and personal estate, or real estate only, either as to the form of the acknowledgment or the character of the officer before whom it is taken. The features here noticed were new, and first appeared in the Act of 1877.

But the great object of all rules of interpretation is to discover the true intention of the law. In arriving at this intention the whole and every part of the statute must be taken and compared together. Sedgwick on Cons. of Stat., etc., page 325; *Dis. Town of City of Dubuque* v. *City of Dubuque, supra.* What was the intention of the act as to the effect to be given to the recording of the assignment?

Section 1 requires the assignment to be recorded in the county where the maker of it resides, or where the business in respect of which it is made has been carried on, and also in the county where the land lies, if it embraces land. The place where it is to be recorded, under this section, is unquestionably the recorder's office of the county. But section 3 requires it to be also recorded in the County Court. The assignee is therein directed to "file with the clerk of the County Court where such assignment shall be recorded" a true and full inventory, etc. In *Hanchett* v. *Waterbury,* 115 Ill. 220, section 3 is interpreted as providing for the filing and recording of the assignment in the County Court. The County Court, where it

is recorded, must be the County Court of the county named in section 1, that is, of the county where it is recorded in the recorder's office. This appears from the language used in section 5, where it is provided that the notice to the creditor, whose claim is excepted to, shall be served and be returnable "at the next term of the County Court in said county." The words "said county" cannot be construed to refer to any other county than that in which the assignment is recorded in the recorder's office as specified in section 1. It certainly could never have been the design of the act that the assignment should be recorded in the recorder's office of the county of the maker's residence, and also in the County Court of another and different county where his business had been carried on.

It follows that the assignment must first be recorded in the recorder's office before it is filed in the County Court. The County Court, where it is to be filed, cannot be determined or designated until it is first recorded in the recorder's office. It must be recorded in the County Court of the county where it has been placed on record in the recorder's office. Inasmuch as the assignment may be recorded in the recorder's office either of the county where the debtor resides, or of the county where he has carried on his business, then, if it is allowable to first record it in the County Court of one of these counties, it might afterward be recorded in the recorder's office of the other county. I conclude, therefore, that the recording of the assignment in the recorder's office is a prerequisite to its record in the County Court.

The assignor and assignee are not the only parties interested in the assignment. All the creditors of the former are interested in it. One of the objects of recording it in the recorder's office, is to give the creditors notice not only that an assignment has been made, but notice also of the terms and provisions of the instrument. One of the evils designed to be remedied by the act was the secrecy of assignments. The object of filing the assignment in the County Court is to bring

it and the assignee named in it under the jurisdiction and control of the court.    The act nowhere provides for bringing the assignee before the court by the issuance and service of process upon him.    As was said in *Hanchett* v. *Waterbury, supra,* "upon the making, filing and recording of the assignment, with the lists and schedules annexed, the County Court, wherein such assignment is filed and recorded    *    *    *    at once acquired jurisdiction," etc.

It is very evident that the provisions for the recording of the assignment, as contained in sections 1 and 3, must be mandatory, as the recording in the recorder's office is necessary to designate the court which is to take jurisdiction, and the recording in the court is necessary to confer jurisdiction upon the court so designated.    A part of section 12, under which this proceeding was instituted, is as follows:  "In case any assignee shall fail or neglect, for the period of twenty days after the making of any assignment, to file an inventory and valuation and give bonds as required by this act, it shall be the duty of the county judge of the county where such assignment may be recorded, on the application of any person interested as creditor or otherwise, to appoint some one, or more discreet and qualified person or persons, to execute the trust embraced in such assignment," etc.    In order that the court may know that the twenty days have passed, it must know when the assignment was made.    Here again the necessity of holding the requirement as to the acknowledgment and recording of the instrument to be mandatory, is apparent.    It may not be possible to show by oral testimony when the assignment was made, but such date can easily and at once be determined, if the assignment, with its accompanying certificate of acknowledgment has been recorded as directed in sections 1 and 3.

It will be noted that in section 12, the recording of the assignment is referred to for the third time.    The new assignee is to be appointed by the "county judge of the county where

such assignment may be recorded." If no assignment has been recorded, the power of appointment does not exist. It can not be said that the person here referred to is the county judge of the county where it is allowable or permissible to record the assignment. The word "may" is here used in the same sense in which it is used in the last line of section 1, where it is said that the assignment "shall also be recorded in the county * * * in which said land may be situated." It there refers to the possibility that there may be land in more than one county. So in section 12, the assignment may be recorded either in the county where the debtor resides or in that where he has carried on business. The judge of that one of these counties, in which it may happen to be recorded, shall make the appointment.

But it is necessary that there should have been a previous recording of the assignment in both the recorder's office and the County Court. Otherwise, the court would have no jurisdiction over the assignee and no power to remove him and appoint his successor. Section 12 gives the power to appoint a new assignee in case the old one fails or neglects "to file an inventory and valuation and give bonds as required by this act," that is by section 3 of the act. Section 3 requires the assignee to file an inventory and valuation "with the clerk of the County Court where such assignment shall be recorded." This language presupposes that the assignment has been recorded in the County Court before the inventory and valuation are filed there. The latter are filed in a court where the assignment has already been recorded for the purpose, among other things, of fixing the amount of the bond to be given.

I am, therefore, of the opinion that the power of appointment conferred by section 12 does not exist except in a case where the County Court has obtained jurisdiction by the recording of the assignment in that court. If this be not the correct construction then either the Assignment Act is uncon-

stitutional or section 12 is to be treated as nugatory for the want of machinery to carry it into effect.

It is claimed by counsel for appellants, that the county judge may appoint a new assignee under section 12, even though the assignment has not been acknowledged or recorded, either in the recorder's office or the County Court. If this be so, what follows? Under the construction thus contended for, every assignee in every assignment made in the State is peremptorily compelled to go into the County Court and submit himself to the supervision of that court by filing an inventory and appraisement and entering into bonds, or in default of doing so, is subjected to the penalty of being removed by the county judge from his office and supplanted therein by a new assignee. This is vesting County Courts with exclusive jurisdiction over the administration of trusts and the removal of trustees, so far as voluntary assignments for the benefit of creditors are concerned. The administration of trusts and the removal of trustees are well established grounds of equitable jurisdiction. By section 12 of article 6 of the Constitution, "The Circuit Courts shall have original jurisdiction of all cases in law and equity." The Legislature has no power to deprive them of this jurisdiction. *Myers* v. *People,* 67 Ill. 503; *Darling* v. *McDonald,* 101 id. 370; *Howell* v. *Moores,* 127 id. 67. It can only confer upon County Courts concurrent and not exclusive jurisdiction in these matters. Therefore, if the construction sought to be put upon the act by the appellants should be held to be correct, it would impose upon this court the necessity either of declaring the whole act unconstitutional or of holding section 12 to be void, so as to eliminate it and leave the balance of the act to stand.

The assignee named in the assignment by the debtor has an interest which he cannot be deprived of without being heard. He has become vested with the title to the property. Before the County Court can remove him and appoint some one in his place, as provided in section 12, he must in some way be

brought before the court.    If he has filed no assignment therein nor in any way submitted to its jurisdiction before the appointment of a new assignee is applied for, how is the County Court to bring him in and get jurisdiction over him? The act provides no process and furnishes no machinery for that purpose.    The citation mentioned in section 7 is to be issued against an assignee already under the control of the court.

It is true that section 14 confers upon the County Court "full authority and jurisdiction   *   *   *   to execute and carry out the provisions of this act."    But under this general clause, the court would have no power to devise and invent for itself a mode of procedure by which it could stretch out its arms and bring before it the assignee and creditors, all of whom are interested in the appointment of a new trustee, and are necessary parties to an application for that purpose.    It is the province of the Legislature to prescribe the mode of procedure to be adopted by courts in bringing parties before them. Chapter 22 of the Revised Statutes, which provides for the exercise of chancery jurisdiction by Circuit Courts, specifies what sort of a summons must issue and how it must be served and returned and how non-residents may be brought in by publication, etc.    Chapter 37 of the Revised Statutes, wherein County Courts are vested with jurisdiction in certain common law cases, uses these words: "The process, practice and pleadings in said court in common law cases, shall be the same as in the Circuit Court in similar cases," etc.    The Assignment Act contains no such provisions as these nor any provisions of any kind, as to the mode of exercising the power of appointment conferred by section 12.

In *Burns* v. *Henderson*, 20 Ill. 264, it was said by Mr. Chief Justice Caton: "Wherever it is possible we must so construe the statutes as to make them harmonize with the Constitution."    The construction here given to Section 12, namely that it contemplates the appointment of an assignee in the

17—138 ILL.

place of one who has already been brought under the jurisdiction of the County Court by the recording of the assignment therein, makes that section, as well as the balance of the act, harmonize with the Constitution. .\* \* \*

I think that the judgment of the Appellate Court, which held the appointment of a new assignee in the place of Cohen to be erroneous, should be affirmed.

Mr. JUSTICE WILKIN, also dissenting:

In my opinion the decision in this case gives the assignment statute of this State the effect of an involuntary assignment law, and vests county courts with the jurisdiction of .involuntary insolvency tribunals. That Silverman did not attempt or intend to make an assignment under the statute, and that the instrument executed by him is not such an assignment on its face, is, as I understand, conceded. It seems to me clear that the statute contemplates only a general assignment, viz., an assignment of all the debtor's property for the benefit of all his creditors. I think the illustration given in the principal opinion, of a debtor owning a store, etc., and a farm, and making an assignment of the former and retaining control of the latter, if carried to its logical conclusion, will show that the construction placed upon the statute by that opinion would lead to endless confusion, and practically defeat the object of the statute. Besides, such an attempt on the part of a debtor would be unlawful. As I understand the act, an insolvent debtor can not make an assignment for the benefit of all his creditors, of only a part of his property not exempt by law, to be *pro rated* among them.

Treating the instrument executed by Silverman to Cohen as an assignment for the benefit of creditors, it must, in my opinion, be given the effect of a general assignment, to bring it within the jurisdiction of the county court. I find no authority in the statute, or elsewhere, giving county courts of this State jurisdiction to bring before them debtors who have

made conveyances of property to secure creditors, not purporting or intended to be assignments under the statute, and either with or without extraneous evidence construe such conveyance into a general assignment for the benefit of all creditors of the grantor, and thus compel him to surrender his entire estate, to be administered upon under the jurisdiction of such court,—in other words, to force him into insolvency. This court has frequently said, "until a debtor is ready and determines to yield the dominion of his property, and makes an assignment for the benefit of his creditors under the statute, his right to dispose of his estate as he chooses is unaffected by the statute." *Preston* v. *Spaulding,* 120 Ill. 208; *Schroeder* v. *Walsh,* id. 403; *Field et al.* v. *Geohegan,* 125 id. 68; *Hulse et al.* v. *Mershon,* id. 52; *Hanford Oil Co. et al.* v. *First Nat. Bank of Chicago,* 126 id. 584; *Home Nat. Bank* v. *Sanches et al.* 131 id. 330; *Farwell* v. *Nilsson,* 133 id. 45. That intention, in my judgment, must be manifested by the voluntary execution of a general assignment for the benefit of creditors, in substantial conformity to the statute. I do not hold that the validity of an assignment should be made to depend upon a strict compliance with the statute as to the form and manner of its execution. In this case, however, appellants attempt to bring the conveyance in question within the provisions of the statute, and the estate of Silverman within the jurisdiction of the county court, against his protest, without showing that the instrument upon which they rely for that purpose was executed or intended to be executed in conformity with the requirements of the law.

If there is sufficient reason to be found in the statute for the construction of an instrument like the one in question into an assignment under the statute, it must be found in section 13, prohibiting preferences, etc., and that, I understand, to be the ground upon which this decision is based. This court has often held that section 13 does not prohibit preferences, except when provided for in the assignment itself, or where, as in

*Preston* v. *Spaulding*, 120 Ill. 208, the preference is made by the debtor, after he has determined to make an assignment under the statute, for the purpose of evading that section, and does in fact afterwards attempt to avail himself of the provisions of the act by making an assignment under it. Had Silverman given preference to the creditors named in the conveyance in question, by transferring, pledging or mortgaging his effects to them, or if he had confessed judgments in their favor, thus creating liens upon such property, even though he had done so with the avowed purpose of giving preferences and to evade said section 13, neither the county court nor a court of equity could have interfered on behalf of petitioners or other creditors, the common law right of a debtor to prefer creditors in either of these ways having been sustained in many of our decisions above cited. But at common law a debtor might not only exercise his right to give preferences in any one of the above named modes, but he might also do so by a partial assignment, viz., by transferring property to a third person in trust, to hold and dispose of for the benefit of the preferred creditors. Burrill on Assignments, sec. 161, p. 221; also, sec. 164, p. 226, (5th ed.) Section 13 does not purport to take away that right. As before stated, our statute was manifestly intended to regulate general assignments. It was designed, doubtless, to secure creditors in such assignments against an unequal distribution of a debtor's estate. By availing himself of it the debtor also obtains important rights and privileges.

A statute of New Hampshire, in force July 5, 1834, provided that no assignment made for the benefit of creditors should be valid unless it provided for an equal distribution of all the debtor's property among his creditors, in proportion to their claims. It was held in *Meridith Manf. Co.* v. *Smith*, 8 N. H. 347, that that act did not apply to an assignment made by a debtor of some part of his property merely for the purpose of paying some particular debt, and RICHARDSON, C. J., rendering the opinion of the court, after stating abuses grow-

ing out of the making of general assignments prior to the passage of the statute, said: "And it is manifest that the statute of 1834 was intended to regulate those general assignments by debtors of all their property, and place in such cases all the creditors on equal footing, securing to each his just proportion, according to the amount of his debt, and to guard the creditors against the fraud of having only a part of the debtor's property assigned for their benefit when contracted to assign the whole,—hence he is required to make oath that the assignment includes all his property not exempt from attachment. It never could have been the intention to prohibit a debtor from assigning any particular property he might possess, for the purpose of paying any particular debt or debts that he might owe."

In *Grubbs et al. v. Morris,* 103 Ind. 166, it was held that the Indiana statute concerning general assignments prohibited preferences, but ELLIOTT, J., rendering the opinion, said: "Where there is only a partial transfer of property, as, when part, only, of the debtor's property is conveyed or where only one creditor is preferred, and there is no general assignment, a conveyance to a trustee will, according to our decisions, be sustained, as not in contravention of the statute." And he quotes from *Cushman v. Giphart,* 97 Ind. 46, as follows: "This statute only provides for a general assignment of all the debtor's property for the benefit of all his creditors, and when that is attempted the statute must be complied with, or the assignment, without regard to actual fraud, will be held fraudulent and void; but an assignment by a debtor for the benefit of a part of his creditors, in order to be held void, must be actually fraudulent." He also points out some of the benefits which accrue to a debtor by statutes governing general assignments.

Section 1556 of the code of Alabama provided: "Every general assignment made by a debtor, by which a preference or priority of payment is given to one or more creditors over the remaining creditors of the grantor, shall be and inure to

the benefit of all the creditors of the grantor, equally." The Supreme Court of that State held in *Holt et al.* v. *Bancroft et al.* 30 Ala. 199, that the statute did not interfere with a debtor's common law right to prefer creditors by a partial assignment, WALKER, J., saying: "The object of the statute was to prohibit all discrimination by a debtor making a general assignment in favor of his creditors. It does not aim to deny, and does not deny, to a debtor the power of securing a creditor's debt by a conveyance of a part of his property. The right of preferring creditors by partial assignments is untouched by the section of the code quoted. It is not the preference itself, but the preference as a feature of a general assignment, that the statute condemns."

The Iowa code of 1851 (sec. 977) said: "No general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors of the assignor, shall be valid unless it be made for the benefit of all his creditors, in proportion to the amount of their respective claims." It was held in *Powers* v. *Arnold*, 19 Iowa, 486, that this statute did not prohibit or interfere with the right of a debtor, as it existed prior to the statute, to make a partial assignment, holding that the statute only applied to general assignments.

Other authorities to the same effect might be cited. These are, as I understand, in harmony with our former decisions construing section 13 of our statute. Our statute neither prohibits preferences, nor interferes with the mode of exercising the right, so long as a debtor does not seek to avail himself of its provisions. Until then he may exercise that right in any mode authorized by the common law, and hence may make a partial assignment for that purpose.

I have not attempted to elaborate the views indicated in the foregoing dissent. With deference to the opinion of my brethren, I am unable to concur in either the reasoning or conclusion presented in the opinion of Justice BAKER. I think the judgment of the Appellate Court should have been affirmed.