## CHARLES P. YOUNG *et al.* Intervening petitioners,

### *v.*

### CALEB CLAPP *et al.*

*Filed at Ottawa October 31, 1892.*

1. INSOLVENT DEBTORS — *Assignment act — preferences considered.* The thirteenth section of the Assignment act does not prohibit preferences generally, but only preferences contained in written deeds of assignment voluntarily executed for the benefit of creditors.

2. A preference given by a debtor after he has made up his mind to execute a general assignment for the benefit of his creditors, is held to be void, on the ground that such a performance must be regarded as a part of the assignment. A constructive assignment is not contemplated by the Assignment act.

3. The Assignment act does not take away the common law right of a debtor to prefer one or more of his creditors. A preference may be given by the execution of a judgment note, resulting in the entry of a judgment; and when a creditor files a bill for the purpose of acquiring a lien, the debtor may give a preference by consenting to the entry of orders therein, or by withholding opposition to the prosecution thereof.

4. Whatever may be the nature of the act which constitutes a preference, it does not fall within the prohibition of section 13 of the Assignment act unless there is a deed or written assignment for the benefit of creditors, of which such act is a part, or may be construed to be a part. The assignment to which that section refers is a transfer, without compulsion of law, by a debtor, of his property, to an assignee or trustee in trust, to apply the same, or the proceeds thereof, to the payment of his debts, and to return the surplus, if any, to the debtor.

5. SAME—*what is an assignment, within the meaning of the act.* A transfer made by a judgment debtor to the receiver in a creditor's bill, under an order of the court, is not an assignment made for the benefit of creditors generally, but rather for the payment of the judgments owned by the complainants in the suit, subject to liens, if any, existing before the filing of the bill. And it makes no difference that the debtor may have consented to the entry of the order requiring such transfer to be made.

6. RECEIVER—*when assignment to him is not for creditors generally.* A receiver appointed under a creditor's bill, which is filed for the benefit of the complainant, and not in behalf of the other creditors, is not necessarily a trustee for all the creditors, but for the benefit of the creditor in whose behalf he is appointed. The primary duty of such

a receiver in such a proceeding is to apply the funds realized from the property of the debtor in satisfaction of the judgment forming the basis of the bill.

7. SAME—*assignment to, not necessary.* The mere appointment of a receiver under a creditor's bill will vest in him the title of the debtor to all his personal property, choses in action and equitable interests, and no assignment or transfer of the debtor is necessary for that purpose.

8. CREDITOR'S BILL—*second bill takes subject to prior lien of the first.* Where an equitable lien is acquired on the property and effects of a debtor by the filing of a creditor's bill and having a receiver appointed, other creditors may intervene, and participate in any surplus left after paying the sum due the original complainant. The proceeding by creditor's bill is one which necessarily recognizes priorities among creditors, and makes distribution of the assets according to such priorities.

9. PARTNERSHIP—*notice of withdrawal of a partner to prevent his liability to subsequent creditors of the firm.* Where a member of a partnership firm withdraws from it, notice should be given of the withdrawal, to prevent his liability to subsequent creditors of the firm. Notice, by publication, to persons who had no dealings with the old firm, is sufficient; but actual notice, or its equivalent, must be shown to have been given to persons who have had business with the firm. Without notice, the retiring member will not be protected from liability for debts incurred in the firm name after his withdrawal.

10. Proof of the mailing of a printed circular, containing notice of the withdrawal of a partner, addressed to a party who had prior dealings with the firm, is *prima facie* evidence that such person received the same in due course of mail, and, without rebuttal, is sufficient to charge such person with notice of that fact.

11. SAME—*taking of firm note for loan—whether fraudulent as to creditors of the firm.* During the solvency of a firm a party loaned money, as he supposed, to the firm, and received the firm note therefor, the money being used for the benefit of one partner. Afterward the firm, when in failing circumstances, took up such note and gave a judgment note of the firm: *Held,* that the creditor taking such last note was not guilty of fraud as to other unsecured creditors of the firm.

12. SAME—*right of firm creditor to subject the firm property to payment of his debt.* The right of a firm creditor to subject the firm property to the payment of his debt, in equity, to the exclusion of the creditor of an individual partner, results solely from the right of the other partner to have the partnership assets applied to the payment of partnership debts. The rule is for the benefit and protection of the partners themselves. The equity of the creditor is of a dependent and

12—147 ILL.

subordinate character, to be enforced through the equities of the partners. If the partner waives his right to have the firm assets applied to firm debts, the equity of the creditor of the firm will be at an end.

13. FRAUDULENT PREFERENCE—*giving judgment notes for more than due.* An insolvent firm preferred eight of its creditors, by giving each a judgment note for the amount due him or them, including an attorney's fee in each, for the taking of judgment, amounting in the aggregate to $1600 : *Held,* that as the firm was then insolvent, the attorneys' fees were gifts to the preferred creditors, and must be regarded as fraudulent and void as to the other creditors not preferred.

14. SAME—*transfer for the debtor's own advantage.* A debtor in failing circumstances is not allowed to place his property beyond the reach of his creditors with a view to his own advantage, by forcing them to release their claims for less than the amount due ; and if a creditor accepts a preference for the purpose of aiding his debtor to hinder and delay the other creditors, as well as for the purpose of obtaining security to himself, the act of preference will be fraudulent and void.

15. If a creditor agrees with his debtor to lend him money for the purpose of enabling him to carry out such a settlement as he may thereafter force his other creditors to accept, and the creditor so agrees in consideration of the consent of the debtor to the entry of a judgment and the appointment of a receiver, it may well be claimed that the judgment creditor is guilty of fraud, in aiding the debtor in a scheme to delay the other creditors in the collection of their debts.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. EGBERT JAMIESON, Judge, presiding.

The following statement of the facts of this case appears in the opinion of the Appellate Court:

"The proof in this case shows that for some time prior to January 1, 1884, Caleb Clapp and Thomas Davies were partners in the wholesale jewelry business in Chicago, under the firm name of Clapp & Davies. On said January 1, 1884, said Clapp & Davies entered into an agreement with one William B. Clapp, by which they purchased from him a large stock of jewelry, fixtures and the accounts of his former business, agreeing to pay him therefor the sum of about $115,000, and it was arranged that said William B. Clapp's name should

appear in the firm name of Clapp & Davies, and he should be held out to the world as a general partner, and for the use of his name he was to receive a sum equal to twelve per cent on the average balance of his account, payable monthly. Said William B. Clapp continued the relationship thus commenced until about March 1, 1886, when, by arrangement, said William B. Clapp withdrew from his apparent partnership relation in the firm, and notices were published in the daily papers, and circulars announcing the fact of his withdrawal sent to the customers of the firm. His account with the firm of Clapp & Davies was left an open account, the books showing that they were indebted to him for a large amount.

"Clapp & Davies continued their business until April 14, 1887, when, being largely indebted to divers persons, and, among them, said William B. Clapp, they executed divers judgment notes, upon which judgments were entered in the Superior Court, one in favor of one Cudworth, for $10,408.86; one in favor of one Mary E. Hanley, for $12,993.30; one in favor of William B. Clapp, for $65,500.00; one in favor of Mary E. Hanley, for $14,067.70; one in favor of one Loring, for $5274.40; one in favor of one Peabody, for $14,700.00; another in favor of Peabody, for $4224.32; and one in favor of one Ada S. Havens, for $10,388.82,—eight judgments in all. On the same day execution was issued on each of said judgments and placed in the hands of the sheriff, who levied the first four executions upon the stock of goods of Clapp & Davies, and returned the other four executions 'no property found and no part satisfied.' On the same day said Ada S. Havens, Daniel A. Loring and Hiram B. Peabody, as complainants, filed a creditor's bill in the said Superior Court, against Caleb Clapp and Thomas Davies as defendants, which contained the ordinary allegations found in such a bill, and alleged that executions on the judgments therein set out and described had been returned *nulla bona.*

"On the same day on the application of the said complainants in said bill, one Charles Catlin was appointed receiver in said cause, and an order was entered requiring the defendants, said Clapp & Davies, to transfer all their property and deliver possession of the same to said receiver. Afterward said Clapp & Davies did make such transfer and deliver possession of such property to said receiver. No answer to the original bill was ever filed by Clapp & Davies. Subsequently intervening petitions were filed in said cause by a number of persons.

"The petition under which the intervenors came in, and on the allegations of which they rely, showed that the complainants in said petition had recovered judgments before a justice of the peace, on which the executions were returned 'no property found,' and alleged that Clapp & Davies had been, prior to the 14th day of April, 1887, engaged in the business of wholesale jewelers; that in the course of said business they had contracted debts to a large amount; that $150,000 of said debts was for goods and merchandise purchased by them upon credit in the course of their business, within six months last past, before the filing of said intervening petition; that among the debts so contracted were the debts due to the complainants in the intervening petitions; that for more than six months said Clapp & Davies had been insolvent and unable to pay their obligations, and that they combined and confederated with their co-defendants, or some of them, to try and dispose of their property and effects, including their merchandise, so as to hinder and delay their creditors, and that in pursuance of said scheme they caused the judgments heretofore mentioned and set out to be entered in the Superior Court, and alleged that said Clapp & Davies had consented, in open court, to the appointment of a receiver; that the judgments were confessed with the purpose, on the part of Clapp & Davies, to give a preference to the said judgment creditors in whose favor they were confessed, and to defeat and avoid the operation and effect of the laws of the State of Illinois regu-

lating voluntary assignments, and alleged, on information and belief, that the said judgments, or some one or more of them, were for a much greater sum than the amounts actually due from Clapp & Davies to the plaintiff in said judgment or judgments.

"Intervenors asked that the petition be consolidated with the creditor's bill filed, and that the intervenors or petitioners have the same rights and equities which they could have had had this bill been filed either as an intervening petition in said cause or as an original bill; prayed that the receiver be enjoined and restrained from paying over to any of said persons in whose favor the said judgments against Clapp & Davies were confessed, any of the moneys or properties that had come to the hands of said receiver; that said judgments, and all the proceeds thereof, subsequent to the assignment to Catlin as receiver, and the transfer and assignment of the property and effects, be decreed and adjudged to be a general assignment of the property and effects of said Clapp & Davies, and that Catlin may be decreed to be the assignee holding the property as a trustee, and that after paying all costs and expenses, all the money to be divided equitably and *pro rata* among the creditors of Clapp & Davies, in proportion to the debts due to each creditor and the whole amount of the indebtedness of Clapp & Davies. These petitions were answered by the plaintiffs in the judgments which were confessed, and all fraud and collusion denied.

"By consent of the plaintiffs in the first four judgments the sheriff turned over the property on which he had levied his executions, to the receiver, they to retain their liens thereon, and under the orders of the court the tangible property, as well as the book accounts, were sold by the receiver. The property that had been levied upon by the sheriff brought the sum of \$101,000, and the book accounts brought the sum of \$10,000. Both sales were made under order of court. While

in possession of the store before the sales, the receiver took in $14,000 for goods sold and in bills collected.

"Upon the hearing the court found the allegations of the original bill to be true, and ordered that the $101,000 be applied on the four judgments on which the levy upon the stock had been made, and that the $10,000 realized from the sale of the book accounts and the $14,000 in the hands of the receiver, making in all $24,000, should be applied *pro rata* on the judgments of the complainants in the original creditor's bill. A large amount, to-wit, the sum of $1600 of attorney's fees, was included in the amounts of the eight judgments confessed, but the money realized upon the sales of the property by the receiver was paid over in satisfaction of the judgments without the deduction or allowance of any attorney's fees from the amount realized."

Messrs. Tenney, Church & Coffeen, for the appellants:

The preferences attempted to be created in favor of the judgment creditors were void, as contravening the Assignment act. *Preston* v. *Spaulding*, 120 Ill. 208; *Hanford Oil Co.* v. *Bank*, 126 id. 584; *Bank* v. *Rehm*, id. 461; *Schroeder* v. *Walsh*, 120 id. 403; *Weber* v. *Mick*, 131 id. 520; *Farwell* v. *Nilsson*, 133 id. 45.

The creation of liens by the confessed judgments, the appointment of the receiver, the execution of the assignment to him by Clapp & Davies, and the delivery to him of the property levied on by the sheriff, and the book accounts which were not covered by the levy, were all parts of one plan, and should be construed together. The assignment so executed was a voluntary one. *Farwell* v. *Nilsson, supra; Weber* v. *Mick, supra; Sartwell* v. *North*, 144 Mass. 188; *Wadhams* v. *Gay*, 73 Ill. 415; *Little* v. *Alexander*, 21 Wall. 501; *Holmes* v. *McDowell*, 15 Hun, 585; 76 N. Y. 596.

The agreement of January 1, 1884, is fraudulent in letter, spirit and purpose, and can not be the foundation of any just

claims against the estate of Clapp & Davies, to the prejudice of their creditors.

The secret agreements in respect to the partnership of W. B. Clapp being designed to deceive, are fraudulent and void. *Kelly* v. *Scott,* 49 N. Y. 595; Greenhood on Public Policy, 152.

The withdrawal of the capital by W. B. Clapp was fraudulent as to creditors of the firm. 1 Bates on Partnership, sec. 564; *Phipps* v. *Sedgwick,* 95 U. S. 3.

The attempted withdrawal from the firm by W. B. Clapp was an additional fraud. 2 Bates on Partnership, sec. 843; *Amsink* v. *Bean,* 22 Wall. 395.

That proof of actual notice of the withdrawal of a partner, or its equivalent, is absolutely essential to protect him from liability for debts subsequently incurred, is shown by the authorities. Parsons on Contracts, 412; *Vernon* v. *Manhattan Co.* 17 Wend. 526; *Ketchem* v. *Clark,* 6 Cow. 701; *Clapp* v. *Roger,* 12 N. Y. 283; *Holtgreve* v. *Wintker,* 85 Ill. 470; *Meyer* v. *Krohn,* 114 id. 574.

The judgment confessed in favor of Peabody was without consideration, and a fraud upon the general creditors. It was for the debt of only one partner. *Menagh* v. *Whitwell,* 52 N. Y. 146; *Shanks* v. *Klein,* 104 U. S. 18; *Keith* v. *Fink,* 47 Ill. 272; *Hulse* v. *Mershon,* 125 id. 52; *Kirby* v. *Schoonmaker,* 3 Barb. Ch. 46; *Pritchett* v. *Pollock,* 2 Southern, 735.

The inclusion in the warrants of attorney and judgment, of attorney's fees, renders the judgment void. *Hulse* v. *Mershon, supra; Weden* v. *Hawes,* 10 Conn. 50; *Russell* v. *Winne,* 37 N. Y. 591.

The whole transaction by which the property of Clapp & Davies was appropriated to the payment of the preferred creditors was within the Statute of Frauds, and void. Bump on Fraud. Con. 20-26; *Bank* v. *Nunes,* 80 Ky. 334; *DeWolfe* v. *Manufacturing Co.* 49 Conn. 328; *Bennett* v. *Ellison,* 23 Minn. 242.

Mr. A. B. JENKS, and Mr. W. A. FOSTER, for the appellees :

A creditor may obtain, and the debtor may give him, a preference. *Preston* v. *Spaulding,* 120 Ill. 208 ; *Hanford Oil Co.* v. *Bank,* 126 id. 584 ; *Farwell* v. *Nilsson,* 133 id. 45 ; *Field* v. *Geohegan,* 125 id. 68 ; *Schroeder* v. *Walsh,* 120 id. 403.

By the filing of a creditor's bill a lien is acquired. Wait on Creditor's Bills, sec. 392 ; *Edmunson* v. *Lyde,* 1 Paige, 639 ; *Miller* v. *Sherry,* 2 Wall. 237 ; *Talford* v. *Burnham,* 7 Dana, 109 ; *Rappleye* v. *Bank,* 93 Ill. 396 ; *Gooding* v. *King,* 30 Ill. App. 169.

As against Clapp & Davies, the makers of the note, it was perfectly legal and proper to include the attorney's fee in the several judgments. *Ball* v. *Miller,* 38 Ill. 110 ; *Haldeman* v. *Insurance Co.* 120 id. 390 ; *Clawson* v. *Munson,* 55 id. 394 ; *Weigley* v. *Matson,* 24 Ill. App. 178.


Mr. JUSTICE MAGRUDER delivered the opinion of the Court :

The thirteenth section of the Assignment Act does not prohibit preferences generally, but only preferences which are contained in written deeds of assignment voluntarily executed for the benefit of creditors. The language of the section is, that "every provision in any assignment hereafter made in this State for the payment of one debt or liability in preference to another shall be void," etc. A preference, given by a debtor after he has made up his mind to execute a general assignment for the benefit of his creditors, has been held to be void, upon the theory that such a preference must be regarded as a part of the assignment. There is no such thing as a constructive assignment contemplated by the Assignment Act. That Act does not take away the common law right of a debtor to prefer one or more of his creditors. A preference may be given by the execution of a judgment note resulting in the entry thereon of a judgment; and, where a creditor files a creditor's bill for the purpose of acquiring such a lien as is

appropriate to that form of proceeding, no reason is perceived why a debtor may not give a preference by consenting to the entry of orders therein, or by withholding his opposition to the prosecution thereof. Whatever may be the nature of the act which constitutes the preference, it does not come within the prohibition of the thirteenth section, unless there is a deed or written instrument of assignment for the benefit of creditors, of which such act is a part, or may be construed to be a part. The assignment, to which said section refers, is a transfer, without compulsion of law, by a debtor of his property to an assignee or trustee, in trust to apply the same, or the proceeds thereof, to the payment of his debts, and to return the surplus, if any, to the debtor.

In the present case, it is charged by the appellants, that the debtors, Clapp and Davies, gave eight of their creditors preferences, which should be declared to be void as coming within the prohibition of said section 13. On April 8, 1887, they executed and delivered to said creditors eight judgment notes, upon which eight judgments were entered up and eight executions were issued on April 14, 1887. Four of these executions were at once levied upon the stock of merchandise and store fixtures belonging to the debtors, and four were returned unsatisfied. A creditor's bill was filed on the same day upon the executions so returned unsatisfied in order to reach the book accounts, bills receivable and equitable assets; and such proceedings were had that a receiver was appointed, the stock and fixtures levied upon were turned over by the sheriff to the receiver, subject to the liens of the judgments under which the levies were made; and a general assignment of all their property, and notes, and accounts, etc., was executed and delivered by the judgment debtors to the receiver, under an order of the court therein entered directing them to make such assignment.

The question, whether these acts and proceedings, begun on April 8 and consummated on April 14, constituted such

preferences as are forbidden by said section 13, depends upon the further question, whether or not they can be construed to be parts of a voluntary assignment executed by the judgment debtors for the benefit of their creditors. Did Clapp and Davies execute any written instrument amounting to a voluntary assignment within the meaning of the assignment law?

The creditor's bill in the present case was filed in behalf of the complainants therein, and not in behalf of the other creditors of the judgment debtors. A receiver appointed under such a creditor's bill is not necessarily a trustee for the benefit of all the creditors, but for the benefit of those creditors in whose behalf he is appointed. (High on Receivers, sec. 454 (2d ed.); *Russell* v. *Chicago Trust and Savings Bank,* 139 Ill. 538). Our statute in regard to creditors' bills provides, that "the court shall have power   *   *   *   to decree satisfaction of the sum remaining due *on such judgments* out of any personal property, money or things in action belonging to the defendant," etc., (Rev. Stat. chap. 22, sec. 49), the judgments referred to being those upon which executions have been issued and returned unsatisfied. The primary duty of the receiver in such a proceeding is to apply the funds, which he realizes from the property of the debtor, in satisfaction of the judgments forming the basis of the bill. (High on Recrs. sec. 453). Hence, a transfer, made by the judgment debtor to the receiver in a creditor's bill under the order of the court, is not an assignment executed for the benefit of creditors, but rather for the payment of the judgments owned by the complainants in the suit, subject to liens, if any, existing before the filing of the bill. By such a transfer, the receiver does not become the agent of the debtor for the distribution of the property, in the sense in which the assignee becomes the agent of the assignor where there is a general assignment for the benefit of creditors. (High on Recrs. sec. 454; *Bouton* v. *Dement,* 123 Ill. 142). It has been held, that an assignment by the judgment debtor of his effects to such a receiver par-

takes of the nature of a mortgage for the payment of the judg-
ment and costs. (High on Recrs. sec. 446).

The only written instrument of transfer, executed by the
judgment debtors in the case at bar, was the assignment made
by them under the order of the court to the receiver appointed
under the creditor's bill; and as that instrument was in the
nature of a transfer of property for the payment of particular
judgments, it cannot be regarded as a general assignment for
the benefit of creditors. It makes no difference, that the
debtors may have consented to the entry of the order requir-
ing them to make the transfer to the receiver, or that they
voluntarily executed the instrument of transfer. A failing
debtor may pay a particular creditor in money, and if he may
pay his debt in money, he may also pay it by a conveyance
of property.

Moreover, our statute in regard to creditors' bills is mod-
elled after the statute of New York. (*Singer & Talcott Stone
Co.* v. *Wheeler*, 6 Brad. 225). Under the former chancery
practice in New York it was customary to require the judg-
ment debtor to execute an assignment of his property to the
receiver appointed under a creditor's bill, but such an assign-
ment was regarded more as a convenience than a necessity.
Without it, there was some doubt as to the vesting of the title
to real estate in the receiver. But the weight of authority in
that State is in favor of the position, that the mere appoint-
ment of the receiver vests in him the title to the personal
property, choses in action and equitable interests of the debtor.
(High on Recrs.—2 ed.—sec. 443). This being so, the assign-
ment by Clapp and Davies was not necessary. They owned
no real estate. The receiver obtained possession of the stock
and store fixtures through the delivery of the same to him by
the sheriff; and his title thereto, as well as to the balance of
the assets, was secured to him by reason of his appointment,
and not by reason of the subsequent execution of the assign-
ment.

It is true that, after the filing of a creditor's bill, other creditors may intervene and become parties thereto, and, if there is a surplus after paying the creditors who have acqui. 1 'liens, such surplus may be distributed *pro rata* under tι orders of the Court. But the proceeding by creditor's bill i﬊ one which necessarily recognizes priorities among creditors, and makes distribution of the assets according to such priorities. It has been held that, where a fund has already gone into the hands of a receiver appointed under a creditor's bill filed by one creditor, another creditor may file his creditor's bill and acquire a subordinate lien upon such fund. (*Russell.* v. *Chicago Trust and Savings Bank, supra.*) It could not have been the intention of the legislature in passing the 13th section of the Assignment Act, that an instrument of transfer,. executed in, and as part of, a suit, begun for the purpose of acquiring a prior lien and affording a specific remedy to particular claimants, should be regarded as a voluntary assignment for the benefit of all the creditors. The Act was not designed to repeal the statute in regard to creditor's bills, or to change the established chancery practice applicable to that form of remedy.

We are, therefore, of opinion that the preferences herein considered cannot be held to be void as contravening the Assignment Law.

It is claimed by the appellants that the judgment notes executed and delivered to W. B. Clapp on April 8, 1887, were fraudulent as against appellants and the other intervening creditors. W. B. Clapp had been engaged in the wholesale jewelry business prior to January 1, 1884, and on the latter day sold his stock and fixtures, etc., to Clapp & Davies, and became a member of the firm. The notes in question represented the balance of the purchase money due to him, and we see nothing in the evidence to indicate that they were not given for a good and valuable consideration. His name appeared on the stationery and advertisements as a partner from Jan.·

uary 1, 1884, to March 1, 1886, and at the latter date he withdrew from the firm. His withdrawal took place more than a year before the failure of Clapp & Davies on April 14, 1887. It is said by the appellants, that, during this period, he held himself out as a partner without putting any money into the firm; that his stock and fixtures were not contributed to the capital of the partnership, but were sold to Clapp & Davies, who were obliged to pay for the same out of the firm assets; that W. B. Clapp merely allowed the use of his name to Clapp & Davies; and that third persons were thus induced to deal with the firm upon the strength of his credit, and under the belief that his stock was a part of the capital, while all the time he was a creditor.

If appellants were injured by the connection of W. B. Clapp with the firm, they would have a right to complain. Where a member of a partnership withdraws from it, notice should be given of the withdrawal. Notice by publication to persons, who have never had any dealings with the firm, has been held to be sufficient. But actual notice, or its equivalent, must be shown to have been given to persons who have had business with the firm. Without notice, the retiring member will not be protected from liability for debts incurred in the firm name after his withdrawal. (*Meyer* v. *Krohn*, 114 Ill. 574). It is conclusively proven, that W. B. Clapp withdrew from the firm on March 1, 1886. The appellants allege in their intervening petitions, that the debts due to them from Clapp and Davies accrued within six months prior to April 14, 1887. If they are bound by this allegation, then they must be regarded as having become creditors long after the retirement of W. B. Clapp. They have proved by their own testimony, that notice of W. B. Clapp's withdrawal was published in all the leading daily newspapers of Chicago at the time when it occurred, and, in addition to this, that a printed circular, containing notice of his retirement, was sent by mail to every creditor whose name was upon the firm books. It appears that the

appellants, Young and ·Bennett, had some dealings with the firm before March 1, 1886.    Proof of the mailing of the circular to them was *prima facie* evidence that they received it; and no rebutting testimony was introduced to overcome the presumption thereby created.    (*Meyer* v. *Krohn, supra.*)    Furthermore, the appellants have recovered their judgments in this case against Clapp and Davies alone, nor have they or any of the other intervening petitioners alleged, that W. B. Clapp was, or is, in any way, liable to them.    If he is indebted to them.for goods sold to the firm while he was a member, suit should have been brought against him as a partner. There is no evidence that he was not at that time, or that he is not now, perfectly responsible.    For the reasons thus stated, we are not convinced that the appellants have been injured by reason of the connection of W. B. Clapp with the firm, or by reason of his withdrawal from it.

It is also claimed, that the indebtedness, for which the smaller of the two judgment notes given to Peabody was executed, was the individual indebtedness of Caleb Clapp, and that the execution of a firm note therefor was a fraud upon the other creditors of Clapp and Davies.    There is no merit in this claim under the facts of the case.    In 1882, while the firm.of Clapp and Davies was solvent, Peabody made a loan of money to the firm, as he supposéd, and received therefor the firm note of Clapp & Davies.    It seems that this money was not used for the benefit of the firm, but was used by Caleb Clapp for his own private purposes.    In 1886 the first note was taken up, and a new note of the firm was given; and for the latter note the judgment note executed on April 8, 1887, was substituted.    So far as the evidence discloses, Peabody knew nothing about the use of the money by one of the partners, but held the firm notes and regarded both partners as his debtors, nor does it appear that Davies ever at.any time objected to.the assumption of the debt by the firm, although he was spoken to about it when the note

was renewed in 1886. The right of a firm creditor to subject the firm property to the payment of his debt in equity, to the exclusion of the creditor of an individual partner, results solely from the right of the other partner to have the partnership assets applied to the payment of partnership debts. The rule is for the benefit and protection of the partners themselves. The equity of the creditor is of a dependent and subordinate character, and is to be worked out and enforced through the medium of the equities of the partners. A partner may part with his right to have the firm property applied to the payment of the partnership liabilities. When he does so, the equity of the creditor is at an end. (*Ladd* v. *Griswold,* 4 Gilm. 25; *McIntyre* v. *Yates,* 104 Ill. 491; *Huiskamp* v. *Moline Wagon Company,* 121 U. S. 310). After the execution of the notes of 1882, 1886 and 1887, and the entry of the judgment upon the last note, and in view of the other facts hereinbefore stated, Davies was estopped from denying the right of Peabody to have his judgment paid out of the firm assets; and inasmuch as Davies had parted with his equity, none of the other creditors could, through that equity, reap any benefit or advantage.

The proof shows that attorney's fees to the amount of about $1600.00 were included in the eight judgment notes, upon which the judgments in question were entered. As the judgment debtors, Clapp and Davies, were insolvent when these notes were given, the fees included therein were gifts to the preferred creditors, and must be regarded as fraudulent and void, as against the other creditors not preferred. (*Hulse* v. *Mershon,* 125 Ill. 52). But the money realized from sales and collections by the receiver was not applied to the payment of such fees, and was only applied upon such portions of the judgments as remained after deducting the fees. The funds realized were not sufficient to pay the judgments when reduced by the deduction of the attorney's fees therein included. As no part of the funds in the receiver's hands have been used to

pay the fees, the fact that they were included in the judgments would not of itself justify a reversal in this case.

It is furthermore claimed by the appellants, that the arrangement, by which the property of Clapp and Davies was appropriated to the payment of the preferred creditors, was within the statute of frauds, and, for that reason, fraudulent and void. The fourth section of the statute of frauds provides that "every gift, grant, conveyance, assignment or transfer of, or charge upon any estate, real or personal, or right or thing in action, or any rent or profit thereof, made with the intent to disturb, delay, hinder or defraud creditors or other persons, and every bond or *other evidence of debt given, suit commenced, decree or judgment suffered with like intent,* shall be void as against such creditors, purchasers and other persons." (Rev. Stat. chap. 59, sec. 4).

Evidence was introduced to show, that Clapp and Davies intended to effect a compromise with their general merchandise creditors at less than one hundred cents on the dollar, after paying their judgment creditors in full. They swear, that they anticipated a surplus after the judgments by confession should be paid, and that they expected some of their judgment creditors to lend them such amount of money, in addition to said surplus, as would be needed to carry out the compromise with their general creditors. It is true that a debtor in failing circumstances will not be allowed to place his property beyond the reach of his creditors "with a view to his own advantage by forcing them to release their claims for less than the amount due." (*Nesbitt* v. *Digby,* 13 Ill. 387). It is also true that, when a creditor accepts a preference for the purpose of aiding his debtor to hinder and delay the other creditors, as well as for the purpose of obtaining security for himself, the act of preference will be regarded as fraudulent and void. (*Huiskamp* v. *Moline Wagon Co.* 121 U. S. 310). If the proof in this case showed clearly that the judgment creditors had agreed with Clapp and Davies to lend them money

for the purpose of enabling them to carry out such a settlement as they might thereafter force their general creditors to accept, and that they had so agreed in consideration of the consent of Clapp & Davies to the entry of the judgments and the appointment of the receiver, then it might well be claimed that the judgment creditors were aiding Clapp and Davies in a scheme to hinder and delay the general creditors in the collection of their debts. But the whole testimony, fairly considered, shows that the object of the judgment creditors was to obtain security for themselves, and not to assist the judgment debtors in forcing the unsecured creditors to settle their claims for less than the amounts due. We do not think that the preferences herein given were fraudulent and void as being within the statute of frauds.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Subsequently, on October 26, 1893, upon an application for a rehearing, the following additional opinion was filed:

Per CURIAM: Since granting a rehearing, we have carefully reconsidered the case, in the light both of the briefs and arguments originally filed, and of the views submitted by the petition for a rehearing and the argument presented in reply thereto, and are brought to the same conclusion announced in the opinion prepared by Mr. Justice MAGRUDER and heretofore filed. That opinion is therefore re-adopted as the opinion of the court, and in accordance therewith, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*