JAMES H. WALKER *et al.*

*v.*

ADAM ROSS *et al.*

50:37 LRA 3

*Filed at Springfield April 2, 1894.*

1. ASSIGNMENT—*for benefit of creditors—defined.* An assignment for the benefit of creditors is a transfer, without compulsion of law, by a debtor, of some or all of his property to an assignee or assignees, in trust, to apply the same, or the proceeds thereof, to the payment of some or all of his debts, and to return the surplus, if any, to the debtor. It implies a trust, and contemplates the intervention of a trustee.

2. An absolute conveyance made directly to the creditor in payment, or any form of lien given as security for the payment, of a *bona fide* debt, though having the effect to give the creditor a preference, is not an assignment for the benefit of creditors, within the meaning of the statute. Wherever such instruments have been held void under section 13 of the Assignment act, it has been upon the ground that, having been made in contemplation of an assignment in trust afterward actually executed, they were to be deemed a part of it. The statute does not contemplate a constructive assignment.

3. The court has repeatedly said that the statute contemplates no such thing as a constructive trust, and the cases in this court hold that there must be an absolute transfer of the whole interest of the assignor, legal and equitable, in the property assigned, in trust, for the benefit of creditors.

4. INSOLVENT DEBTORS—*right to prefer creditors by sale or mortgage.* A debtor, solvent or insolvent, notwithstanding the statute relating to voluntary assignments, may lawfully transfer any part or the whole of his property in payment, or incumber it by mortgage, deed of trust in

the nature of a mortgage, judgment confessed, or pledge, as security for the payment of such debts preferred. By selling or mortgaging his property directly to his creditors, the debtor exercises a clear, legal right. His right, by such means, to prefer some creditors to others, is not affected by the statute.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the County Court of Hancock county; the Hon. JOHN D. MILLER, Judge, presiding.

Messrs. SHARP & BERRY BROS., for the appellants:

It is not the form, but the effect, of an instrument which is to be considered in determining whether or not it is an assignment. *Watson* v. *Bayley,* 12 Pa. St. 164.

A lease has been held to constitute an assignment, and so has a power of attorney. *Lucas* v. *Railroad Co.* 32 Pa. St. 458.

A bond and mortgage. *Owen* v. *Arvis,* 26 N. J. L. 22.

A chattel mortgage. *Winner* v. *Hoyt,* 66 Wis. 227.

A chattel mortgage and bill of sale. *Burrows* v. *Heldroff,* 8 Iowa, 103; *Vanpatten* v. *Burr,* 52 id. 518.

Any form of instrument or instruments by which an insolvent debtor disposes of his entire property not exempt, or even substantially all, for the benefit of certain creditors, with preferences, is, in legal effect, an assignment for the benefit of all creditors. *Friend* v. *Yagerman,* 26 Fed. Rep. 814; *Martin* v. *Houseman,* 14 id. 160; *Kelley* v. *Richardson,* 21 id. 70.

It has been held by many courts that an assignment of all one's attachable property, which is intended to close up one's business, and does so at once, is a general assignment. *Murray* v. *Noyes,* 26 Vt. 473; *Noyes* v. *Hitchcock,* 29 id. 36; *Holt* v. *Bancroft,* 30 Ala. 250.

When Ross executed these two instruments and assigned his books of accounts, he intended to and did surrender the dominion of all his property, and hence the preferences are void. *Hanford* v. *Prouty,* 133 Ill. 339; *Hier* v. *Kaufman,* 134 id. 215; *Bank* v. *Rehm,* 126 id. 461; *Winner* v. *Hoyt,* 66 Wis. 227; *White* v. *Cotzhausen,* 129 U. S. 329.

52                    WALKER *et al. v.* ROSS *et al.*

Brief for the Appellees.    Opinion of the Court.

Mr. J. W. MARSH, and Mr. W. N. GROVER, for the appellees:

This court, in *Schroeder* v. *Walsh*, 120 Ill. 403, *Farwell* v. *Nilsson*, 133 id. 45, *Weber* v. *Mick*, 131 id. 520, *Farwell* v. *Cohen*, 138 id. 216, and *Young* v. *Clapp*, 147 id. 176, has given construction to the act relating to voluntary assignments.

An assignment contemplates the intervention of a trustee. A voluntary assignment for the benefit of creditors implies a trust, and contemplates the intervention of a trustee. Assignments directly to creditors, and not upon trust, are not · voluntary assignments for the benefit of creditors.

The transfer by a creditor of all his property does not, of itself, make what is termed a general assignment, but it must also be conveyed to trustees, to be held by them in trust for other creditors. Burrill on Assignments, (5th ed.) sec. 122; *Weber* v. *Mick*, 131 Ill. 520.

The acts of Ross did not constitute voluntary assignment. *Moore* v. *Meyer*, 47 Fed. Rep. 99; *Preston* v. *Spaulding*, 120 Ill. 208; *White* v. *Cotzhausen*, 129 U. S. 329; *Bank* v. *Bank*, 136 id. 223; *Shapleigh* v. *Baird*, 26 Mo. 322; *Murray* v. *Logan*, 31 id. 91; *Johnson* v. *McAllister*, 30 id. 327; *State* v. *Benoist*, 37 id. 500; *Crow* v. *Beardsley*, 68 id. 437.

Per CURIAM: After a careful consideration of this case and the arguments of the respective parties, we are satisfied that the judgment of the Appellate Court is correct. In its opinion filed in the case, that court has fully considered every question involved, and, as we concur with the Appellate Court, the opinion will be adopted and filed as the opinion of this court. That opinion is as follows:

PLEASANTS, J.: "This was a petition to the county court, by appellees, creditors of appellant Ross, to have two chattel mortgages, given by said appellant to certain other creditors therein respectively named, upon his stock of goods in store at Warsaw, declared to be a general assignment under the statute, and appellant Helms required to give bond, as as-

signee, to administer the property in accordance with the orders of the court. Appellants answered severally, replications were filed and evidence heard, whereupon appellant Ross moved the court to dismiss the case as to him, which was denied, and an order entered substantially according to the prayer of the petition, and a motion by each of the appellants for a rehearing overruled. They then took this appeal.

"For quite a number of years prior and until the 13th of August, 1892, appellant Ross was a dry goods merchant at Warsaw. Having become embarrassed, and being pressed for payment and threatened with suits, on that day he went to Chicago to consult some business friends and creditors upon the situation stated, and upon their advice executed a chattel mortgage upon his entire stock to certain creditors therein named, to secure an aggregate indebtedness due them of $8145.13, setting forth the amount due to each, respectively, and delivered it to Robert R. Baldwin, an attorney of the John V. Farwell Company, one of the mortgagees. On the same day he made and signed a second mortgage upon the same stock to certain other creditors therein named, including the appellees, to secure an aggregate indebtedness to them of $3495.79, setting forth the amount due to each, respectively, but did not deliver it until the 15th. These instruments were in the usual form of chattel mortgages, with the usual defeasance clauses, and gave to the mortgagees power to sell at public or private sale, and for cash or on credit, as they should think best, and in addition thereto contained the following: 'The said mortgagor hereby authorizes the sheriff of the said county of Hancock to execute the power of sale in this mortgage granted to the mortgagees or their assigns or legal representatives, and all other powers to them, or either of them, granted or given by this mortgage.' And the second was therein expressly declared to be subject to the first. The following evening (August 14) appellant Ross left Chicago on his return to Warsaw, accompanied by Mr. Baldwin, who had

the first mortgage, and was acting for and under the direction of the John V. Farwell Company, and had telegraphed to have appellant Helms, then sheriff of Hancock county, meet him there on his arrival. They arrived shortly before noon of the 15th, and went to the store. After Ross had gone to his dinner, Baldwin obtained the keys from the clerks and took possession. He then turned them over to the sheriff, with the mortgage, directing him to take care of the stock and to sell as provided in the mortgage, referring him to Mr. Grover as the attorney of the company, if he should need any advice. When Ross, on his return, found the sheriff in possession, he acknowledged the second mortgage, and delivered it to the magistrate for the mortgages to be recorded, and then assigned his notes and book accounts, which were of small value, to still other creditors,—Mrs. Miller and Mrs. Geitz,—to pay *bona fide* debts then due and owing from him to them. Thus he disposed of all the property he had that was not exempt by law from execution.

"On the 16th an expert from the house of the Farwell company, assisted by Ross and his clerks, took an invoice of the goods mortgaged, making it amount to over $13,000, which exceeded the sum of his indebtedness. Under the direction of the first mortgagees, the sheriff, on the 18th, duly advertised the stock for sale at public auction on the 29th, and in pursuance thereof sold it for $7166.49, which he now holds, subject to the decision of this case.

"Both of the mortgages were dated August 15, 1892. The first was recorded on the 23d and the second on the 16th of said month. It further appears that the Farwell company acted solely for the first mortgagees; that Baldwin acted solely for the Farwell company; that neither had any interest in or connection with the second mortgage or the assignment of the notes and book accounts; that the sheriff acted for and under direction of the first mortgagees; that when Ross left Chicago he did not know what Baldwin intended to do, but was in-

formed by him before they arrived at Warsaw; that he supposed his stock would pay his indebtedness in full, and did not intend to make an assignment for the benefit of his creditors, under the statute, but did intend that in case of its deficiency the first mortgagees should be preferred.

"There is no serious dispute as to what appellant Ross in fact did or intended to do. His answer admits nearly all of the averments in the petition. The question is, whether these acts and intentions amounted, in legal effect, to an assignment for the benefit of his creditors, within the meaning of chapter 10 of the Revised Statutes of 1891. The county court held that they did; that that court therefore had jurisdiction of the matter, and that the preferences attempted to be given were void, (sec. 13,) and accordingly ordered that appellant Helms give bond, as assignee, and proceed in the distribution of the moneys in his hands, the proceeds of said sale, under the further direction of the court. Whether this holding was proper, depends upon the true construction of the statute. In quite a number of cases the Supreme Court has given it a construction applicable to the conceded facts shown by this record. Without presuming to vindicate that construction, or quoting *in extenso* from the opinions in these cases, we shall refer to them only far enough to warrant, in our opinion, the conclusion that it is in conflict with that of the county court given in this case.

"First, as to what constitutes an assignment within the meaning of the act. In *Weber* v. *Mick*, 131 Ill. 533, the court approved and adopted the definition in Burrill on Assignments, sections 2 and 3: 'A transfer, without compulsion of law, by a debtor, of some or all of his property to an assignee or assignees, in trust, to apply the same, or the proceeds thereof, to the payment of some or all of his debts, and to return the surplus, if any, to the debtor. It implies a trust, and contemplates the intervention of a trustee; and assignments to creditors directly, and not upon trust, are not such.' In

*Schroeder* v. *Walsh,* 120 Ill. 403, it was said: 'Notwithstanding that statute, a debtor may pay one creditor in full, either in money or by the sale of his property. That act applies only to conveyances of property to an assignee or trustee in trust, to convert the same into money for the benefit of the creditors of the assignor.' In *Farwell* v. *Nilsson,* 133 Ill. 45, the court outlines such an assignment as, 'it has always been understood in this State,' being 'a written deed of conveyance executed by the assignor, as party of the first part, to the assignee, as party of the second part, reciting the grantor's indebtedness and inability to pay, and conveying his property, real and personal, by apt words of sale and transfer, to the assignee, in trust, to take possession of and sell the same, and to collect the outstanding debts, and out of the proceeds to pay the creditors,' and holds that it was preferences in instruments such as are above described that the legislature intended to prohibit. The mere form of the instrument is no doubt immaterial, provided the operation of it is to create a trust in the property conveyed, for the benefit of the creditors. It must be an actual trust, created by operation of the instrument itself. The court has repeatedly said that the statute contemplates no such thing as a constructive trust.

"These cases further hold, that there must be an absolute transfer of the whole interest of the assignor, legal and equitable, in the property assigned, in trust, for the benefit of creditors, and hence that absolute conveyances made directly to the creditor, in payment, or any form of lien so given as security for the payment, of a *bona fide* debt, though having the effect to give him a preference, is not an assignment for the benefit of creditors, within the meaning of the statute. Wherever such instruments have been held void under section 13, it has been upon the ground that, having been made in contemplation of an assignment in trust afterwards actually executed, they were to be deemed a part of it. (*Preston* v. *Spaulding,* 120 Ill. 208; *Young* v. *Clapp,* 147 id. 176.) Other-

wise a debtor, solvent or insolvent, notwithstanding the statute, may lawfully transfer any part or the whole of his property, absolutely, in payment, or encumber it by mortgage, deed of trust in the nature of a mortgage, judgment confessed, or pledge, as security for the payment of such debts preferred. *First Nat. Bank of Chicago* v. *North Wisconsin Lumber Co.* 41 Ill. App. 343 ; *Young* v. *Clapp*, 147 Ill. 176, and cases *supra*.

"We perceive no conflict between these cases, or any of them, and that of *Farwell* v. *Cohen*, 138 Ill. 216, so much relied on by counsel for appellees as to what is necessary to constitute an assignment for the benefit of creditors. In the latter it is defined just as in *Weber* v. *Mick* and others, and in its application to the instrument there in question, which was in the form of a bill of sale of a stock of goods from the debtor to one of his creditors, the court held that on its face it was an absolute transfer of the whole interest, legal and equitable, in the property, without any condition of defeasance providing for its return upon payment of the debts mentioned, and was made to Cohen expressly in trust, as well for the benefit of other creditors named, with preferences. By all the tests stated in the other cases or here sought to be applied, it must have been held an assignment within the meaning of the statute. By the same tests stated in that case and the others cited, those here in question were not. The notes and book accounts of the debtor were absolutely assigned directly to the creditors named, involving no trust, but in payment of debts not denied to have been *bona fide* due and owing by him to them. The others were also made directly to the creditors therein respectively named, without the intervention of any trustee or the creation of any trust for the benefit of creditors, and they were both, in form and effect, chattel mortgages. They did not, in terms or effect, absolutely transfer the whole interest of the debtor, legal and equitable, in the property. They did contain a condition of defeasance providing for its return upon payment of the debts mentioned.

"From the fact that they were given to secure the payment of notes so soon to become due, and the assumption, which we do not say was unwarranted, that having thereby disposed of all his property Ross had no hope or intention to redeem, but expected to go out of business, it is argued that the liberal construction of the statute, as being 'intended mainly for the benefit of creditors of the insolvent, so as to prevent the evils and advance the remedy in view, which the court has so often declared to be proper, would hold these instruments to be, in effect, an assignment in trust within its provisions, or in fraudulent evasion of its provisions.' This would be a constructive assignment—a thing which the statute does not contemplate. The premises from which this conclusion is drawn do not change the character of the instruments. They are still but securities given to the creditor directly, and subject to the right of redemption, with no trust whatever for the benefit of creditors, but, at most, a trust as to the excess, if any, for the benefit of the debtor, which the law would imply if it were not expressed. And the court say in *Farwell* v. *Nilsson, supra,* that to hold such an instrument to be an assignment would not be construction even the most liberal, but judicial legislation.

"In the cases cited by counsel,—*Hide and Leather Nat. Bank* v. *Rehm,* 126 Ill. 461, *Hanford* v. *Prouty,* 133 id. 355, and *Hier* v. *Kaufman,* 134 id. 223,—the instruments in question were followed by actual assignments, and the language relied on must be considered as referring to such cases. *White* v. *Cotzhausen,* 129 U. S. 329, also cited, was expressly based on *Preston* v. *Spaulding,* which was a like case. In *Moore* v. *Meyer,* 47 Fed. Rep. 99, this case was explained and the Illinois cases reviewed in an elaborate opinion by Judge Allen, (United States Circuit Court for Southern District of Illinois,) and it is held as in accordance with the construction of the statute by our Supreme Court, that such instruments do not, of themselves, even in effect, constitute an assignment. Nor, when not made in view of an actual assignment following, can

it be regarded as a fraudulent evasion of the statute, because the debtor, though intending to appropriate all his property to the payment of his debts, is not bound to make an assignment. In so appropriating it by absolute conveyances or mortgage directly to the creditors therein named, not creating a trust, he exercises a clear, legal right, and may thus distribute it as he sees fit. His right by such means to prefer some creditors to others is not affected by the statute. Appellant Ross did not intend to make an assignment for the benefit of creditors, and never did make it, for the reason that he did intend to make preferences, and knew he could not do so by such an instrument.

"It is claimed that the authority to the sheriff of Hancock county to execute the powers given to the mortgagees made him a trustee and the mortgages an assignment. We think not. They did not purport to give him any interest, legal or equitable, in the property. They did not appoint him to execute the powers referred to, but only authorized him to do so as far as the mortgagor was concerned. Under that authority he could do nothing with it except by consent and under direction of the mortgagees. They, as a body, could not take possession or sell, but must act through some individual, and the mortgagor, on his part, consented that the sheriff might act for them. They could have appointed another, notwithstanding the authority given him by the mortgagor. Baldwin did, in fact, first take possession, and he turned it over to the sheriff as a mere minister, without title or interest. He could have done nothing in the premises in his own name or right. Nor did he affect or pretend that he could or did. He was in no sense an assignee or trustee.

"For the reasons stated we are of opinion that the county court erred in its holding and order, which will therefore be reversed."

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*