37 LRA343n

156   575
168   87

AUSTIN W. WRIGHT *et al.*

*v.*

CHARLES L. HUTCHINSON *et al.*

*Filed at Ottawa June 15, 1895.*

INSOLVENCY—*what is not an assignment for the benefit of creditors.* A deed of trust of real property to secure creditors who agree to a compromise of their claims, accompanied by a pledge of personal property as additional security, with a provision that any piece of property shall be released to the grantor whenever he shall place in the hands of the trustee its value as fixed and set opposite its description attached to the agreement, does not constitute an assignment for the benefit of creditors.

*Wright* v. *Hutchinson,* 54 Ill. App. 535, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. SAMUEL P. McCONNELL, Judge, presiding.

This is an appeal from the judgment of the Appellate Court for the First District, affirming a decree of the circuit court of Cook county sustaining a demurrer interposed by appellees to a bill in equity filed by appellants, against them and John Cudahy, and dismissing said bill as to appellees for want of equity. The following synopsis of the bill is taken from the opinion of the Appellate Court:

"We adopt the statement of the bill made by appellants' counsel in their brief, as follows: It appears by the bill, that in April, 1893, Wright and Cudahy entered into an agreement to buy and sell, on joint account, mess pork on the Board of Trade in Chicago, and to share equally in the profits and losses resulting from such venture. In accordance with what seems to be a not unusual custom on the board, each of them was to buy as he saw fit, and sell, pork on the Board of Trade, either for present or future delivery, each conducting his transactions

in his own name and upon his own personal responsibility. At that time each of the parties had bought considerable pork, and it was agreed that their joint deal should cover the pork which they had each severally so purchased. This arrangement continued until about the last of May of the same year, when Cudahy represented to Wright that the financial condition was becoming such that it was difficult to borrow money, and the rumor that he was engaged with Wright in this venture made it more difficult for various firms and companies in which he was interested to carry on their business, and that those interested with him engaged in packing, etc., desired to have all the pork which he had bought and which stood in his name, transferred, so that the contracts therefor should stand in the name of Wright, which was accordingly done. Cudahy did not then express any intention of withdrawing from his part of the venture, but it was understood between him and Wright that all of these ventures were to be carried on strictly for the joint benefit and account of Cudahy and Wright, but solely in the name of Wright.

"Owing to the continued decline in provisions on the Board of Trade, Cudahy suspended on the first of August, 1893, and became insolvent, and on the second of that month Wright executed a voluntary assignment to his co-complainant, Catlin. Prior to the insolvency of himself and of Cudahy, Wright paid out, on account of losses incurred upon these joint ventures, the sum of $230,000. The unpaid indebtedness of him and Cudahy on account of such joint ventures aggregates $350,000. Cudahy never paid out or contributed any sum whatever in payment of the losses so incurred. Wright's estate has paid a dividend of five per cent to the creditors of Wright and Cudahy, and may possibly pay, perhaps, three per cent more. Cudahy now claims that he is not jointly responsible with Wright, and declines to account with him or

Catlin, or to settle the partnership accounts between him and Wright in any way.

"Soon after the failure of Cudahy, some time in the month of August last, he caused to be circulated among his creditors a paper commencing as follows: 'We, the undersigned, creditors of John Cudahy, hereby agree to accept in full settlement of claims and demands which we have at this date against him, individually or jointly with any one else, his notes for fifty per cent of the amounts due us and each of us, said fifty per cent of our claims and demands being as follows:' Here follows a long list of signatures, with the amounts of the various claims of the parties signing, figured on the basis of fifty per cent. The paper further provided that the payments should be secured by a trust deed given to Charles L. Hutchinson, one of the appellees, covering certain real estate in Cook county, which was described therein, and also that certain other securities should be placed in the hands of the trustees to secure the payment of these notes. The trustee was given power to sell and dispose of the real estate and other securities at any time before the maturity of the notes, whenever best in his judgment and for the advantage of the creditors and Cudahy. It was further provided that, at any time before the disposition of said real estate and securities, Cudahy might release any of the same by paying into the hands of the trustee the amount in cash set opposite each piece of said real estate and opposite each of the other securities, and thus have the same released from the operation of the trust. Afterward Cudahy offered to each of his creditors his note for the remaining fifty per cent of his indebtedness, and, as additional security for the payment of all his notes, his five notes for $100,000 each, payable in one, two, three, four and five years after date, respectively, to be indorsed by his brothers, Michael, Patrick and Edward Cudahy, and to be placed in the hands of Hutchinson, trustee. This arrangement was carried out and

assented to by the great majority, in number and amount, of his creditors, and the property therein referred to was duly transferred and conveyed to Hutchinson, and the notes therein referred to duly executed, and on the 18th day of August, 1893, John Cudahy, with his wife, who is also a defendant to the bill, executed and delivered to Hutchinson a deed of trust conveying to him in trust, for the purposes of this arrangement, the real estate referred to in the first proposition to his creditors, which is more particularly described in the deed. Ernest A. Hamill, the third appellee, is successor in trust in this deed of trust. The bill further alleges that there was neither joint property nor any joint fund, owing to the method in which the business of the partnership between Wright and Cudahy was conducted, and that by the assignment to Hutchinson a trust is created in favor of the creditors of Wright and of Cudahy, which should be enforced, in view of the fact that Wright has paid upwards of $230,000 on account of the debts and losses of this partnership, and his estate had paid the further sum of $20,000. It is also alleged, on information and belief, that Cudahy has large amounts of property other than that by him conveyed to Hutchinson, and that sundry persons named were, at the time this proposition was made to them by Cudahy, creditors of Wright and Cudahy as partners, in a considerable amount. The bill prays an accounting of the partnership, that a receiver may be appointed, that Cudahy may be decreed to pay to such receiver such sum as shall, upon a full accounting, appear to be due from him, and that the transfer from Cudahy to Hutchinson be decreed to be an assignment for the benefit of all the creditors of Cudahy, and that Hutchinson be removed and some suitable person appointed to administer upon the estate in the hands of Hutchinson, and act as receiver in the case. As to the defendant John Cudahy, who also demurred to the bill, the demurrer was overruled, presumably on the ground that as to him a case was made

for a partnership accounting, but as to the appellees the demurrer was sustained and the bill dismissed for want of equity."

COLLINS, GOODRICH, DARROW & VINCENT, and GREGORY, BOOTH & HARLAN, for appellants:

Where an assignment has been made, and the county court has taken jurisdiction, no other court will be permitted to interfere with the administration of the trust estate actually in the possession and control of the county court. *Hanchett* v. *Waterbury*, 115 Ill. 223; *Farwell* v. *Crandall*, 120 id. 73; *Hanford Oil Co.* v. *Bank*, 126 id. 584.

Where, by construction and operation of law, it is right to have an assignment declared as arising out of conveyances not in terms purporting to be such, and where the property sought to be reached is not in custody of the county court, equity has jurisdiction. *Preston* v. *Spaulding*, 120 Ill. 214; *Davis* v. *Dock Co.* 129 id. 180; *Wilson* v. *Aaron*, 132 id. 238; *Farwell* v. *Nilsson*, 133 id. 45; *Ide* v. *Sayer*, 129 id. 234; *Plume Co.* v. *Caldwell*, 136 id. 163.

Assignments for creditors do not give the creditors any title to the property assigned, but only a right to enforce the duty undertaken by the assignees. Burrill on Assignments, sec. 491, p. 777.

The provision that certain pieces of property should be sold or released on payment of certain sums, respectively, is not a defeasance. If this provision is to be construed as a provision going farther than this and for the benefit of Cudahy, it is void, as are all such provisions in assignments for the benefit of assignors. *Townsend* v. *Coxe*, 151 Ill. 62, and cases cited.

DUPEE, JUDAH & WILLARD, for appellees :

A court of chancery is always reluctant to replace a trustee by the appointment of a receiver, and unless a clear case is made it will not do so. 20 Am. & Eng. Ency. of Law, 316.

The conveyance by Cudahy to Hutchinson was a trust deed in the nature of a mortgage, and was not, in form or effect, an assignment for the benefit of creditors with preferences, within the intent of the Insolvent act. *Bank* v. *Bank*, 7 Watts & Serg. 335 ; *Walker* v. *Ross*, 150 Ill. 50 ; Burrill on Assignments, (6th ed.) secs. 7, 8, and cases cited; *Hoffman* v. *Mackall*, 5 Ohio St. 124; *De Wolf* v. *Sprague Manf. Co.* 49 Conn. 282 ; *Farwell* v. *Cohen*, 138 Ill. 217.

No decree in an action for accounting in favor of one partner against the other can be rendered so long as there are unpaid firm debts.   Gow on Partnership, 35 ; *Tyng* v. *Thayer*, 8 Allen, 391; *Brindly* v. *Kupfer*, 6 Pick. 179.

The only object of the appointment of a receiver is to place the partnership assets under the protection of the court, and to prevent everybody except the officer of the court from in any way intermeddling with them.   Lindley on Partnership, 545 ; 17 Am. & Eng. Ency. of Law, 1298 ; High on Receivers, sec. 475.

Mr. JUSTICE CARTER delivered the opinion of the court:

The questions here involved arose on the demurrer of appellees to appellants' bill of complaint.   The bill has a two-fold purpose:   First, to compel an accounting and settlement of the alleged partnership matters between appellant Wright and John Cudahy; and second, to have the agreement between Cudahy and his individual creditors, and the deed of trust upon certain real estate, and the pledge of certain additional securities securing the payment of the promissory notes therein provided to be given, declared to be an assignment for the benefit of all the creditors of said John Cudahy.   The first branch of the case is not involved in this appeal, as the trial court held the bill was properly brought, as against John Cudahy, to settle alleged partnership accounts, but dismissed it as to appellees Hutchinson, Hamill and Margaret F. Cudahy.   Hutchinson is the trustee, and Hamill his successor in trust, named in the agreements and trust deed

which are alleged to constitute the assignment, and Margaret F. Cudahy is the wife of John Cudahy, who joined with him in the trust conveyance.

The principal questions raised on the appeal to this court are, first, whether or not said agreement, and trust deed upon real estate, and the pledge of certain choses in action, mentioned in the bill, constitute an assignment for the benefit of the creditors of John Cudahy under the law of this State; and second, if it be such assignment, whether or not Wright is, in any sense, a creditor of Cudahy, and entitled for that reason, or as the representative of the creditors of the alleged co-partnership, to call upon a court of equity to have said instruments of writing construed to be an assignment and the trust estate administered accordingly.

While the arguments of counsel have been largely addressed to the second question, we do not think its solution important here, inasmuch as the first question is really the meritorious one, and would, in this or some other proceeding, probably have to be eventually solved.

The deed of trust given to secure the promissory notes of John Cudahy contemplated by the agreement is not made an exhibit to the bill nor is its substance stated, and from the terms of the agreement and allegations of the bill and the rules of chancery pleading we must assume that, except so far as modified by the provisions of the agreement, it is in the ordinary form of a deed of trust upon real estate, in the nature of a mortgage, given to secure the payment of the indebtedness therein described, and that it contains the usual condition of defeasance.

The question then is, do the provisions of the agreement and the pledge as set out in the bill, taken in connection with such a deed of trust, when construed in the light of the facts alleged in the bill, constitute an assignment for the benefit of creditors? We are clearly of the opinion that this question must be answered in the nega-

tive. A defeasible, and not the absolute, title to both the real and personal property is conveyed. The payment of the notes is secured by the deed of trust, and the personal property is pledged as "additional security." The provision in the agreement that any piece of property should be released to the grantor or pledgor, whenever he should place in the hands of the trustee its value as fixed and set opposite its description attached to the agreement, was a mere provision for a partial redemption, and, so far from converting the writings into an assignment for the benefit of creditors, shows that not only was the equity of redemption retained by the grantor, but that he reserved the right to redeem each piece or parcel of property separately, as he might be able.

The questions at issue have been frequently reviewed by this court and need not be elaborated here. In *Walker* v. *Ross*, 150 Ill. 50, in an opinion of the Appellate Court for the Third District, adopted by this court as a correct exposition of the law upon the subject, after reviewing the principal decisions of this court upon the question, it was, among other things, said: "The court has repeatedly said that the statute contemplates no such thing as a constructive trust. These cases further hold that there must be an absolute transfer of the whole interest of the assignor, legal and equitable, in the property assigned in trust for the benefit of creditors, and hence that absolute conveyances made directly to the creditor in payment, or any form of lien so given as security for the payment, of a *bona fide* debt, though having the effect to give him a preference, is not an assignment for the benefit of creditors, within the meaning of the statute. Wherever such instruments have been held void under section 13, it has been upon the ground that, having been made in contemplation of an assignment in trust afterwards actually executed, they were to be deemed a part of it. (*Preston* v. *Spaulding*, 120 Ill. 208; *Young* v. *Clapp*, 147 id. 176.) Otherwise a debtor, solvent or insolvent, notwithstanding the

statute, may lawfully transfer any part or the whole of his property, absolutely, in payment, or encumber it by mortgage, deed of trust in the nature of a mortgage, judgment confessed, or pledge as security for the payment of such debts preferred.   (*First Nat. Bank of Chicago* v. *North Wisconsin Lumber Co.* 41 Ill. App. 383; *Young* v. *Clapp*, 147 Ill. 176, and cases *supra.*)   We perceive no conflict between these cases, or any of them, and that of *Farwell* v. *Cohen*, 138 Ill. 216, so much relied on by counsel for appellees as to what is necessary to constitute an assignment for the benefit of creditors.   In the latter it is defined just as in *Weber* v. *Mick* and others, and in its application to the instrument there in question, which was in the form of a bill of sale of a stock of goods from the debtor to one of his creditors, the court held that on its face it was an absolute transfer of the whole interest, legal and equitable, in the property, without any condition of defeasance providing for its return upon payment of the debts mentioned, and was made to Cohen expressly in trust, as well for the benefit of other creditors named, with preferences."   And it was further said in that case that the instruments, which were chattel mortgages, "did not, in terms or effect, absolutely transfer the whole interest of the debtor, legal and equitable, in the property.   They did contain a condition of defeasance providing for its return upon payment of the debts mentioned."

Counsel are in error in supposing that under the rule laid down in *Farwell* v. *Cohen* the writings in question should be construed to be an assignment for the benefit of creditors.   The distinctions between them and the conveyance held in that case to be an assignment are the same, in many respects, as those pointed out in *Walker* v. *Ross, supra.*   That the property was conveyed to a trustee with power to sell does not necessarily change the nature of the instruments as a mere conveyance of property as security for the payment of a debt.   The power of sale

might be ineffectual under the statute, but the conveyance could be foreclosed in the same manner as any other mortgage.

For the reasons stated the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*